**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| THOMAS DAVIA and JEANNE DAVIA, ) <br> on behalf of themselves and all others ) <br> similarly situated, ) <br> ) <br>            Plaintiffs, ) <br> ) <br>      v. ) <br> ) <br> WINDSOR WINDOW COMPANY d/b/a ) <br> WINDSOR WINDOWS AND DOORS, ) <br> and WOODGRAIN MILLWORK, INC., ) <br> ) <br>            Defendants. ) <br> _____ ) | Case No. _____ <br><br><br><br><br><br><br> JURY TRIAL DEMANDED |

## CLASS ACTION COMPLAINT

Plaintiffs, Thomas Davia and Jeanne Davia (collectively, the "Davias" or "Plaintiffs"), by and through their undersigned counsel, individually and on behalf of all other persons and entities similarly situated, allege against Defendants, Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Woodgrain Millwork, Inc. ("Woodgrain") (collectively, "Defendants") the following facts and claims upon knowledge as to matters relating to themselves and upon information and belief as to all other matters and, by way of this class action Complaint, aver as follows:

## INTRODUCTION

1. This is a proposed class action brought by Plaintiffs, individually and on behalf of the below-defined Classes against Defendants, to obtain damages and injunctive relief arising from and relating to their purchase and installation of defective wood and wood clad windows

("Window" or "Windows") designed, manufactured, advertised, distributed and sold by Defendants.

2.     This class action arises out of Defendants' attempt to design, manufacture, advertise and sell Windows that have a propensity to leak, prematurely degrade, and otherwise fail. Defendants' Windows fail to comply with relevant and applicable building codes and standards, and they have breached their express and implied warranties with respect to these products.

3.     Unknown to Plaintiffs and the Class, the Windows contain a latent defect that allows water to penetrate and leak behind the aluminum cladding, resulting in premature wood rot and other physical damage to both the Windows and main structure.

4.     Defendants' negligent and fraudulent behavior with respect to their design, manufacture, warrant, sale and delivery of these defective Windows has caused Plaintiffs and the other Class members (defined below) to suffer direct financial harm. Defendants' failure to comply with the plain warranties of the Windows renders them markedly less valuable because of their propensity to leak, rot, cause premature degradation and otherwise fail, thus causing severe damage to the Windows and other property in the Plaintiffs' and Class members' homes, residences, and buildings. Plaintiffs would have paid significantly less for the Windows, or not purchased them at all, had they known the material facts that the products contained the above described defects and caused severe damage to other property.

**PARTIES**

5.     Plaintiffs are citizens and residents of Wisconsin. The Davias own a home in Green Lake, Green Lake County, Wisconsin, in which Defendants' Windows are installed.

2

6.     Defendant Windsor was and is a company organized and existing under the laws of the State of Idaho, with a principal place of business in the State of Iowa. At all times relevant herein, Windsor transacted and conducted business in Wisconsin.

7.     Defendant Woodgrain was and is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in the State of Idaho.

8.     At all times relevant herein, Woodgrain was the parent company of Windsor, and jointly transacted and conducted business in Wisconsin.

9.     Defendants used, commingled, and combined their resources to design, develop, manufacture, market, and sell the Windows at issue.

10.    At all times relevant herein, the Defendants were actual and/or *de facto* joint ventures in the design, development, manufacture, marketing, and sales of the Windows at issue.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2) (diversity jurisdiction) and the Class Action Fairness Act, in that: (i) there is complete diversity, as Plaintiffs are citizens of Wisconsin and Defendants are domiciled, incorporated, and headquartered in Idaho, Iowa, and Oregon; (ii) the amount in controversy exceeds $5,000,000.00 (Five Million Dollars), exclusive of interest and costs; and (iii) there are 100 or more members of the proposed Class.

12.    Venue lies in this District pursuant to 28 U.S.C. § 1391 because Plaintiffs reside in this Judicial District, and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District. Additionally, at all times relevant herein, Defendants conducted and/or transacted business in this Judicial District and, therefore, are subject to personal jurisdiction in this District and reside here for venue purposes.

## COMMON FACTUAL ALLEGATIONS

13.     This case concerns Defendants' failure to disclose to purchasers of their Windows, the builders of the purchasers' structures, and owners of the Windows, that the Windows were defective in material and workmanship as a result of the design and manufacturing practices of Defendants. As a result of the defect, there is a high probability the Windows will fail, and likely already have developed wood rot in the Window sashes. The wood rot will progress to the frames and adjoining structure unless repaired and replaced before the rot progresses to those components. The defect is the product of Defendants' design and manufacturing process: (a) the resulting wood rot is masked by the aluminum cladding of the Windows; (b) the wood rot is incipient and takes an extended period to advance to the stage in which it becomes visible upon ordinary inspection; and (c) because of its incipient nature and masking by the exterior cladding, the wood rot will likely not exhibit itself until it is so advanced as to become apparent upon ordinary inspection, but not until after Defendants' limited warranty period has expired.

14.     Defendants hold themselves out to both the construction industry and the public at large as being providers of superior, quality, and durable products, including the Windows that are the subject of this litigation.

15.     At all times relevant herein, Defendants were engaged in the marketing, sale, supply and delivery of windows in the State of Wisconsin and elsewhere in the United States.

16.     Unknown to Plaintiffs and Class members, the Windows are defective and fail to perform at Plaintiffs' residence and at Class members' residences by permitting water intrusion through unsealed or inadequately sealed areas of the Windows' frames and sashes, and into the interior of the residences.

17.     The Windows are also defective and fail to perform at Plaintiffs' residence and at Class members' residences by permitting water to penetrate the Window components, wherein it is absorbed by wood members, and causes rot, premature degradation, leaking, and failure of the wood. This routinely occurs well in advance of the expected useful lives of the Windows.

18.     Degradation of the wood components permits additional water infiltration into the home in an accelerated cycle.

19.     The water intrusion and above-described damage resulting from the defective Windows constitutes "occurrences" resulting in "property damage" to property other than Defendants' "product" as those terms are commonly defined and used in the typical commercial general liability insurance policy.

20.     The above-described defects are due to fundamental design, engineering, and manufacturing errors, which should have been within Defendants' expertise.

21.     Because the Windows rot, prematurely degrade, otherwise fail, and permit water intrusion, they violate the building codes and industry standards, and amount to a breach of the Windows' warranties.

22.     The above-described deficiencies exist at the time the Windows leave the factory.

23.     Failure of the Windows begins upon installation and continues during repeated and prolonged exposure to weather and ordinary use.

24.     Because of their expertise in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the products left their control.

25.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their windows, but failed to adequately correct the defective design or formulation that resulted in said damage.

5

26.     Defendants knew or should have known the potential for leakage, rot, premature degradation, and failure of their Windows, but failed to adequately correct the defective manufacture that resulted in said damage.

27.     Defendants failed to warn purchasers, installers or users of the above-described risks of failures. This omitted information is material to the purchasing decision.

28.     The purchase of Defendants' Windows is covered by a written express warranty, which forms part of the basis of the bargain between Defendants and the purchaser.

29.     The Windows' written express warranty also forms part of the basis of the bargain between the seller of the home and home buyers, including Plaintiffs and Class members.

30.     The typical purchase agreement for the sale and/or construction of Class members' homes likely contains one or more provisions transferring or assigning manufacturers' and suppliers' warranties to them at the time of purchase or conveyance.

31.     The transfer or assignment of the manufacturers' and suppliers' warranties, which would include the Window warranties, forms part of the basis of the bargain at the time Plaintiffs and Class members purchased their homes.

32.     Even where a manufacturer or supplier warranty transfer provision is not present, the average homeowner expects, at the time of purchase, his or her home comes with such warranties, including a window warranty against defects.

33.     Defendants also expressly and implicitly represent in documents available to the public that their warranty is part of the product being sold, and that the written warranties apply to the owners of the homes containing the Windows.

6

34.     Defendants represent in their express warranty and documents available to the public that the Windows will be free from defective materials and workmanship for at least 10 years.

35.     Plaintiffs and putative Class members relied upon these representation when they purchased the Windows and/or structures containing the Windows.

36.     Plaintiffs and putative Class members reasonably expected and expect that the Windows would actually last longer than ten (10) years.

37.     Defendants' representations, expressly and impliedly, through their website, brochures and marketing materials, that the Windows are suitable and free from defects, were intended to, and likely did, affect the market by inducing builders, contractors, suppliers and others to purchase the Windows.

38.     Upon information and belief, Defendants were put on notice of defects and resultant damage in the Windows by homeowners across the country.

39.     Defendants' shipping of the Windows with actual or constructive knowledge of the defects, or with negligent or reckless disregard of the presence of defects, constituted a breach of their express warranty, and makes the limitations of the express warranty unconscionable in all respects, and, therefore, void *ab initio*.

40.     The published written warranties include the following limitations and exclusions:

    a)      The warranty is ambiguous with regard to coverage of the Windows' wood components;

    b)      The warranty limits coverage of wood warping;

    c)      The warranty purports to exclude damages caused by design limitations and design defects;

    d)      The warranty excludes the cost of labor for removal, repair or replacement of defective parts, products or glass;

7

e)      The warranty excludes the cost of repainting or refinishing associated with the repair or replacement of defective parts or products;

f)      The warranty requires that the homeowner be able to identify a "defect" in the Windows;

g)      The warranty places unreasonable time limitations on notifying Defendants of defects, including Defendants' unilateral determination of when the homeowner should have "reasonably" discovered a defect;

h)      The warranty shortens the warranty period by beginning from the date of manufacture, regardless of when the Window is purchased, installed and put into use and operation;

i)      The warranty gives Defendants the final determination of whether or not a defect exists;

j)      The warranty potentially requires payment of a field service fee for inspecting the Windows;

k)      The warranty requires the homeowner to produce information that may not be accessible or otherwise readily understandable, including IGU and/or glass codes;

l)      The warranty purports to limit Defendants' responsibility by providing a remedy of repair, replacement, or refund a portion of the original purchase price, solely at Defendants' option;

m)      The warrant purports to exclude any liability for consequential, incidental, or punitive damages;

n)      The warranty purports to exclude any liability in excess of the original purchase price of the product;

o)      The warranty limits repair and replacement parts and products to the remainder of the original warranty period;

p)      The warranty purports to disclaim all warranties, expressed or implied, including implied warranties of merchantability or fitness for a particular purpose;

q)      The warranty purports to disclaim performance ratings identified by the AAMA and NFRC ratings affixed to the Windows by the Defendants;

r)      The warranty purports to disclaim future performance of the Windows;

s)      The warranty purports to disclaim any obligation to comply with building standards, including applicable building codes;

t)      The warranty purports to allow Defendants to inconsistently apply the warranty at their own discretion;

u)      The warranty's 10-year limitation is in and of itself unconscionable; and

v)      In all other ways revealed during discovery, and/or otherwise determined at trial.

41.     The warranty is not a negotiated contract and is so one-sided that no reasonable person would ever knowingly agree to its terms if properly disclosed.

42.     Further, upon information and belief, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by failing to respond to homeowners, requiring the owner to pay for an inspection of the Windows, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor for such repair or replacement.

43.     The above described pattern and practice by Defendants has the effect of discouraging defect claims by Class members or continuing to pursue remedies through Defendants.

44.     Moreover, during contact with Class members, Defendants conceal their knowledge of the defects in the Windows in the Class members' residences.

45.     As Defendants have known or should have known of their Windows' defects and have failed to timely honor their warranty, the warranty has failed its essential purpose and the limitations therein are null and void, and Plaintiffs and Class members have otherwise not received the value for which they, their builders, or their contractors bargained for at the time the Windows were purchased or transferred to homeowners.

46.     The defects in Defendants' Windows also make the Windows unfit for their intended use.

47.     Given the leaking, rotting, premature degradation and failure of the Windows, the Windows have a reduced life expectancy and require unexpected maintenance, repair, and replacement by Plaintiffs and Class members.

48.     The Windows' defects and resultant damages have caused a diminution in the value of the homes.

49.     Defendants knew or should have known that the Windows did not and do not satisfy industry standards.

50.     Defendants knew or should have known that their Windows: (a) were defective in design and manufacture; (b) not fit for their ordinary and intended use; (c) not merchantable; and (d) failed to perform in accordance with the advertisements, brochures, representations, marketing materials, and warranties disseminated by Defendants.

51.     Defendants' Windows failed to conform to the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

52.     Because the Windows leak, and allow for increased water absorption, water penetration, rot, degradation, cause reduced life expectancy, and otherwise fail, the Windows are neither durable no suitable for use as an exterior building product.

53.     The above-described defective conditions of the Windows and resultant damages are present in Plaintiffs' home and are common among Class members.

54.     Plaintiffs and Class members have been proximately harmed by the Windows' above-described defective condition(s) and Defendants' above-described conduct.

## PLAINTIFFS' EXPERIENCE

55.     The Davias built a new home in approximately March of 2013, at which time Defendants' Windows were installed on their home.

56.     The home is located at 407 White Oaks Court, Green Lake, Green Lake County, Wisconsin.

57.     In purchasing Defendants' Windows over all other brands of windows, the Davias and their builder relied on the representations made by Defendants and Defendants' representatives that the Windows were high quality and free from defects.

58.     Unknown to the Davias, the Windows were defective in that they allowed water to penetrate the area behind the aluminum cladding, which caused condensation, wood rot, leaks and other failures as described.

59.     The characteristics of the Window defect (that allowed for water to penetrate the cladding and failed to protect the wood from rot) were present in the Windows when they left the factory, and were part of the Window by design and manufacture.

60.     The Davias have wood rot and other damage to the Windows.

61.     In or about December 2013, the Davias first noticed moisture in the Windows. The Windows gradually began to exhibit worsening signs of moisture and wood rot.

62.     In the summer of 2014, the Davias notified Windsor to make a warranty claim. A representative from Windsor, Michael Perrin ("Mr. Perrin"), inspected the Davias' home during the summer of 2014. Mr. Perrin inspected the Windows and removed and replaced the trim and rusted nails. Upon leaving, Mr. Perrin assured the Davias that Windsor would rectify the problem with the Windows.

11

63.     To date, the Davias have not received a response from Windsor regarding the Windows and Windsor has failed to rectify the problem, despite the Davias reaching out to Windsor repeatedly.

64.     The Davias continue to experience excessive condensation and moisture on their Windows.

65.     The defective Windows allowed water to intrude into the Davias' home, resulting in property damage to their home including, but not limited to, damage to surrounding walls, floors and ceiling, and also damage to other personal property.

66.     Further, Mr. Perrin's actions have caused additional leaking and related problems.

67.     Defendants knew of the defect in the Windows in 2013 because of similar warranty claims and complaints from customers throughout the country, but wrongfully concealed the information about the defect from the Davias.

## CLASS ALLEGATIONS

68.     Plaintiffs bring this action individually and as representatives of all those similarly situated pursuant to Fed. R. Civ. P. 23. The requirements of Fed. R. Civ. P. 23(a), (b)(2), (b)(3) and (c)(4) are met with respect to the Classes (collectively, "Class" or "Classes") defined below:

INJUNCTIVE RELIEF CLASS:
All persons and entities who are current or former owners of a structure on which Defendants' wood or wood clad windows are installed.

(ALTERNATIVE) INJUNCTIVE RELIEF CLASS:
All persons and entities in the State of Wisconsin who are current or former owners of a structure on which Defendants' wood or wood clad windows are installed.

<u>DAMAGES CLASS</u>:
All persons and entities who are current or former owners of a structure in which Defendants' wood or wood clad windows are installed and whose windows have exhibited wood rot.

<u>(ALTERNATIVE) DAMAGES CLASS</u>:
All persons and entities in the State of Wisconsin who are current or former owners of a structure on which Defendants' wood or wood clad windows are installed and whose windows have exhibited wood rot.

These Classes excludes:

a) any Judge or Magistrate presiding over this action and members of their families;

b) any employees of Defendants;

c) any entity in which Defendants have a controlling interest or which has a controlling interest in Defendants and their legal representatives, assigns, and successors;

d) any person who has released Defendants or is currently in litigation with Windsor related to Windsor's wood or wood clad windows; and

e) all persons who properly execute and file a timely request for exclusion from the Class.

Plaintiffs propose that the Class be divided into subclasses if and as necessary to align Class interests.

69.    *Numerosity*: The Classes are composed of 1,000 or more persons geographically dispersed throughout the State of Wisconsin, the joinder of whom in one action is impractical. Moreover, upon information and belief, the Classes are ascertainable and identifiable from Defendants' records or identifying marks on the Windows.

70.    *Commonality*: The critical question of law and fact common to the Classes that will materially advance the litigation is whether the Windows are inherently defective, contrary to the expectations imparted by Defendants through their warranties, representations and omissions.

13

71.    Furthermore, other questions of law and fact common to the Classes that exist as to all members of the Classes and predominate over any questions affecting only individual members of the Classes include the following:

a)    Whether the Windows are defective;

b)    Whether the Windows have not performed or will not perform in accordance with: (i) the reasonable expectations of ordinary consumers; and (ii) industry expectations of a 30-year useful life;

c)    Whether Defendants were negligent in their design and manufacture of the Windows;

d)    Whether (and when) Defendants knew or should have known about the defective condition of the Windows;

e)    Whether (and when) Defendants concealed from consumers and/or failed to disclose to consumers the defect;

f)    Whether Defendants concealed and/or failed to disclose the defective condition of the Windows to consumers;

g)    Whether Defendants breached their express warranty that the Windows were free of defects in material and workmanship when sold when, in fact, Defendants knew or should have known they were defective by allowing water to penetrate behind the cladding and expose the interior wood components to moisture for prolonged periods without draining, evaporation or adequate preservation to prevent wood rot;

h)    Whether Defendants breached implied warranties of merchantability by designing, manufacturing and selling the Windows when those Windows would not pass without objection in the trade; were not fit for the ordinary purpose of exterior windows; and did not conform with the promises and affirmations of fact Defendants made concerning the Windows;

i)    Whether Defendants' limited warranty contained limitations, exclusions, and disclaimers such as to cause it to fail of its essential purpose;

j)    Whether Defendants' warranty as drafted and implemented to exculpate Defendants from liability for Windows they knew or should have known were defective when designed, manufactured, and sold;

14

k)    Whether Plaintiffs and Class members are entitled to compensatory damages, including, among other things: (i) compensation for all out-of-pocket monies expended by members of the Class for replacement of Windows and/or installation costs; (ii) the failure of consideration in connection with and/or difference in value arising out of the variance between the Windows as warranted and the Windows containing the defect; and (iii) the diminution of resale value of the structures containing the Windows resulting from the defect;

l)    Whether Plaintiffs and the Class members are entitled to replacement of their defective Windows with non-defective windows;

m)    Whether Plaintiffs and the Class members are entitled to restitution and/or disgorgement;

n)    Whether Defendants falsely advertised and marketed its products to consumers;

o)    Whether the Windows conform to the applicable Wisconsin building codes and/or applicable industry standards;

p)    Whether the Windows damage other property within Plaintiffs' and Class members' homes;

q)    Whether Defendants concealed the defective nature of the Windows;

r)    Whether Defendants' limited warranty is unconscionable;

s)    Whether Defendants' limited warranty adequately disclaimed its liability;

t)    Whether Plaintiffs are entitled to prejudgment interest, attorneys' fees, and costs from Defendants; and

u)    Whether Defendants' conduct was negligent, reckless, willful, wanton, intentional, fraudulent or the like, entitling Plaintiffs (and Class members) to statutory or punitive damages from Defendants.

72.    *Typicality*: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise out of Defendants' conduct in designing, manufacturing, marketing, advertising, warranting and selling the defective Windows and Defendants' conduct in concealing the defects in the Windows to owners, contractors, developers, and suppliers.

15

73.    *Adequate Representation*: Plaintiffs will fairly and adequately protect the interests of the members of the Class and have no interests antagonistic to those of the Class given that Plaintiffs are members of the Class they also seek to represent. Plaintiffs have retained counsel experienced and competent in construction litigation, product liability, complex litigation and consumer class actions.

74.    *Predominance and Superiority*: This class action is appropriate for certification because questions of law and fact common to the members of the Class predominate over questions affecting only individual members, and a class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable. Should individual Class members be required to bring separate actions, this Court and/or courts throughout Wisconsin would be confronted with a multiplicity of lawsuits burdening the court system, while also creating the risk of inconsistent rulings and contradictory judgments. In contrast to proceeding on a case-by-case basis, in which inconsistent results will magnify the delay and expense to all parties and the court system, this class action presents far fewer management difficulties while providing unitary adjudication, economies of scale and comprehensive supervision by a single court.

75.    Moreover, Plaintiffs envision no unusual difficulty in the management of this action as a class action and the amount of money at stake for each Class member is not sufficient for each member to hire his or her own counsel and experts and to bring their own action.

## ESTOPPEL FROM PLEADING THE STATUTE OF LIMITATIONS

76.    Plaintiffs and Class members are within the applicable statute of limitations for the claims presented hereunder because Plaintiffs and Class members did not discover the defect, and could not reasonably have discovered the defect.

77. Due to the concealed location of rot and other primary leak points, Plaintiffs are often unaware of the wood rot, degradation, and other failures until the end or expiration of Defendants' warranty period.

78. Further, Defendants are aware of the defects because of the numerous warranty claims and complaints alleging similar defects and asserted against them throughout the United States.

79. Defendants are estopped from relying on any statutes of limitation or repose by virtue of their acts of concealment, which include Defendants' concealment from Plaintiffs, Class members, and the general public that their Windows were (and are) defective, while continually marketing the Windows as a durable and suitable product.

80. Defendants had a duty to disclose that their Windows were (and are) defective, unreliable, and inherently flawed in design and/or manufacture.

81. Plaintiffs and Class members had no knowledge of, and no reasonable way of discovering, the latent defects found in Defendants' Windows at the time they purchased the product or their homes, residences, buildings, and other structures.

82. Defendants did not notify, inform, or disclose to Plaintiffs and Class members that there were defects in the Windows.

83. Because Defendants failed in their duty to notify Plaintiffs and Class members that their product was (and is) defective, the statute of limitations should be tolled on Plaintiffs' and Class members' claims.

## ESTOPPEL FROM PLEADING WARRANTY LIMITATIONS AND DISCLAIMERS

84. Defendants are also estopped from relying on any warranty limitation or disclaimer as a defense to Plaintiffs' and Class members' claims.

85.     By virtue of Defendants' acts, the Windows installed in Plaintiffs' and Class members' residences have not lived up to Defendants' warranties and representations, and given the defective condition of the Windows and the premature deterioration of the Windows that requires unexpected maintenance, wear and/or replacement, the Windows have not proven to be of the value bargained for and/or of that compared to other windows.

86.     Defendants knew or should have known that their Windows were defective in design and/or manufacture, and that said Windows were not fit for their ordinary and intended use, were not merchantable, and failed to perform in accordance with the advertisements, marketing materials and warranties disseminated by Defendants or with the reasonable expectations of ordinary consumers such as Plaintiffs and Class members.

87.     Accordingly, any warranty provided by Defendants fails its essential purpose because it purports to warrant that the Windows will be free from defects for a prescribed period of time when, in fact, said Windows fall far short of the applicable warranty period.

88.     Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available under Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy.

89.     As a result, any time limitations, exclusions, or disclaimers which restrict the remedies encompassed within Defendants' warranties are unconscionable and unenforceable, and, therefore, Defendants are estopped from relying on the same.

## COUNT I
## NEGLIGENCE/GROSS NEGLIGENCE

90.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

91.     At all times material hereto, Defendants designed and manufactured the Windows.

92.     Defendants had a duty to Plaintiffs and Class members to design and manufacture Windows that were free of latent defects that would cause the Windows to leak, rot, prematurely degrade, and otherwise fail.

93.     Defendants had a duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

94.     Defendants had a duty to Plaintiffs and Class members to ensure that the Windows' components were suitable as an exterior product, either by testing or by verifying third-party test results.

95.     Defendants had a duty to Plaintiffs and Class members to ensure their Windows complied with industry standards and all applicable building codes throughout Wisconsin.

96.     Defendants had a duty to Plaintiffs and Class members to forewarn purchasers, installers, and users regarding the known risk of product failures or the existence of a material defect.

97.     Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and in determining whether the Windows that they sold, and continue to sell, contain a latent defect that would result in the failure of the Windows to perform as reasonably expected.

98.     Defendants failed to exercise ordinary and reasonable care in the design and manufacture of the Windows and breached the foregoing duties.

99.     Defendants breached their duty to Plaintiffs and Class members to test the Windows to ensure adequate performance of the Windows for a reasonable period of use.

100.    Defendants breached their duty to Plaintiffs and to Class members to ensure that the Window components were suitable, either by testing or by verifying third-party test results.

101.    Defendants breached their duty to Plaintiffs and to members of the Class to ensure that the Windows complied with industry standards and applicable building codes.

102.    Defendants breached their duty to Plaintiffs and to members of the Class to forewarn purchasers, installers, and users regarding the known risk of product failures.

103.    The negligence of Defendants, their agents, servants, and/or employees, include the foregoing, as well as the following acts and/or omissions:

      a)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately and thoroughly testing them to all applicable standards and building codes;

      b)    designing, manufacturing, processing, distributing, delivering, supplying, inspecting, marketing and/or selling Windows without adequately testing their long term performance;

      c)    negligently failing to ensure that the Windows conformed to all applicable standards and building codes; and

      d)    concealing information concerning the defects inherent in the Windows from Plaintiffs and the Class members, while knowing that Defendants' Windows were defective and non-conforming with accepted industry standards and building codes.

104.    The Windows have been tested by experts in the field. Those experts found the aforementioned defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

105.    Plaintiffs and the members of the Class have been damaged because the defective Windows do not perform their ordinary purpose of sealing Plaintiffs' home against the elements.

106.    Plaintiffs and Class have been damaged as a direct and proximate result of the negligence, carelessness, recklessness, willfulness, and wantonness of Defendants as above-described.

107.    Further, Plaintiffs and Class members have suffered damages to other property, including, but not limited to, the surrounding walls, floors, and ceilings and damage to other personal property.

108.    As Defendants' conduct was grossly negligent, reckless, willful, wanton, intentional, fraudulent, or the like, Plaintiffs and Class members are entitled to an award of punitive damages against Defendants.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTIBILITY

109.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

110.    Defendants are designers, manufacturers, and suppliers of the Windows, and for a number of years, marketed, warranted, distributed, and/or sold the Windows in Wisconsin.

111.    Defendants entered into contractors with retailers, suppliers and/or contractors to sell their Windows that were to be installed at Plaintiffs' and the Class members' properties.

112.    Plaintiffs and the Class members are intended third party beneficiaries of those contracts because it was the clear and manifest intent of Defendants that the contracts were to primarily and directly benefit Plaintiffs and the Class members.

113.    Thus, Plaintiffs and Class members are in privity with Defendants.

114.    Defendants impliedly warranted to Plaintiffs, the Class members and/or their agents that the Windows were merchantable and reasonably fit for their ordinary purpose, and would not cause damages as set forth herein.

115. Defendants breached the implied warranty of merchantability by selling their Windows that were defective and not fit for their ordinary purpose.

116. Defendants' Windows were not of merchantable quality and not fit for intended use when they left the factory due to the defects in the Windows described herein.

117. The Windows have been tested by experts in the field. Those experts found defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

118. The numerous and serious defects described herein make the Windows unfit and inappropriate for their intended use within structures.

119. The Windows are also unfit for their particular purpose. Defendants manufactured and distributed their Windows in climates with multiple seasons and geographic locations. Defendants knew, or should have known, that its Windows would be subjected to varying temperatures and weather conditions, including rain cycles, throughout each year. Due to the defects and resultant leakage, rot, premature degradation, and other failures, the Windows are unfit for their particular purpose.

120. Despite having knowledge of the Windows' defects, Defendants have failed to provide an adequate remedy.

121. As a result, Defendants breached their implied warranties to Plaintiffs and Class members by producing, manufacturing, distributing and selling them a defective product that was unfit for its intended use and for a particular purpose.

122. As a direct and proximate result of Defendants' breach of the implied warranty on the Windows, the Plaintiffs and Class members have suffered actual and consequential damages.

123. Plaintiffs and Class members suffered and will continue to suffer losses as alleged herein, in an amount to be determined at trial.

## COUNT III
## BREACH OF EXPRESS WARRANTY

124.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

125.     After putting their Windows into the stream of commerce, Defendants expressly represented and warranted that the Windows were appropriate for their intended use and were free from defects and that they conformed to all applicable building codes and industry standards.

126.     Specifically Defendants provided that their Windows would "free from defects in materials and workmanship which significantly impair their operation and proper usage."

127.     Defendants entered into contracts with retailers, Plaintiffs, Class members, Plaintiffs' builders, Class members' builders, suppliers and/or contractors to sell Windows to be installed at Plaintiffs' and Class members' properties.

128.     Plaintiffs and Class members were intended third-party beneficiaries of the contract between Defendants and Plaintiffs' and Class members' respective builders.

129.     The representations and warranties made by Defendants in marketing and selling their Windows formed part of the basis of the bargain between Defendants and the purchasers of the Windows at the time of the sale.

130.     Purchase agreements for the construction or sale of residences or structures, including Plaintiffs' purchase agreement, contained provisions transferring or assigning the manufacturers' warranties, including window warranties. Such provisions are valid transfers and assignments, and the transferred and assigned warranties formed part of the basis of the bargain at the time the home was purchased.

131.     Defendants' warranty certifies that they will replace or repair components of their products found to be defective for at least ten years.

23

132.    Upon information and belief, all of Defendants' written warranties applicable to Class members contain the same or similar provisions.

133.    Through their written warranties, brochures, marketing materials, website, and other representations regarding the performance, durability, and quality of the Windows, Defendants created express warranties for the benefit of Plaintiffs and Class members.

134.    Thus, Defendants' express warranties and representations are applicable to the Windows installed in Plaintiffs' and Class members' residences and/or structures.

135.    Specifically, Defendants expressly warranted to Plaintiffs and Class members that the Windows purchased by Plaintiffs and Class members were free from defects in materials and workmanship that substantially impair their operation or performance and that they would last at least ten years.

136.    However, despite Defendants' assurances, as described in detail *supra*, the Windows contain the aforementioned defects and do not conform to all applicable building codes and industry standards and are not free from defects.

137.    The Windows have been tested by experts in the field. Those experts found the aforementioned defects in the design and manufacturing of the Windows that permit water penetration in the Windows.

138.    These aforementioned defects are present when the Windows leave Defendants' control.

139.    Defendants breached the express warranty by selling Windows that were defective and not reasonably fit for their ordinary and intended purpose and did not conform to Defendants' express representations and/or warranties. Further, contrary to Defendants' representations and warranties, the Windows were not free from design and material defects for at least ten years.

140.    By their conduct and defective products, Defendants have breached their express warranty with Plaintiffs and members of the Class.

141.    In addition, Defendants have breached their express warranties by not providing Plaintiffs and Class members with Windows which were free from defects and/or by suppressing warranty claims.

142.    Defendants' written warranties are also unconscionable and fail their essential purpose because they purport to warrant that the Windows will be free from manufacturer defects for at least ten years when, in fact, the Windows fall far short of the applicable warranty period. To the contrary, due to the leakage in the Windows, Defendants' Windows begin failing after only a few years' (or less) use.

143.    Moreover, Defendants' warranties are woefully inadequate to repair and replace failed Windows, let alone reimburse for any damage suffered to the underlying structure due to the inadequate protection provided by the product. The remedies available in Defendants' warranties are limited to such an extent that they do not provide a minimum adequate remedy. Further, the warranty is inadequate because by its 10-year limitation alone, Defendants seeks to reduce the reasonable expected life of the product.

144.    Plaintiffs and Class members contacted Defendants regarding their warranty claims and the issues with their Windows.

145.    Defendants refused Plaintiffs' and Class members' warranty claims and refused to repair or replace the Windows or damage caused by the defective Windows.

146.    Plaintiffs and Class members adequately met all pre-suit notice requirements for their warranty claims.

147.    Defendants have denied, failed to pay in full, and/or failed to respond to warranty Claims.

148.    Accordingly, the limitations on remedies and the exclusions in Defendants' warranties are unconscionable and unenforceable.

149.    As a result of Defendants' breaches of express warranties, Plaintiffs and Class members have suffered actual damages in that they purchased homes, residences, buildings, and other structures containing defective Windows that have failed or are failing prematurely due to leakage and increased moisture absorption problems. This failure has required or is requiring Plaintiffs and Class members to incur significant expenses in repairing or replacing their Windows. Replacement is required to prevent on-going and future damage to the underlying structures or interiors of Plaintiffs' and Class members' residences.

150.    Thus, as a direct and proximate result of Defendants' breach of the express warranty on the Windows, Plaintiffs and Class members have suffered actual and consequential damages.

## COUNT IV
## VIOLATION OF WISCONSIN DECEPTIVE TRADE PRACTICES ACT,
## WIS. STAT. § 100.18

151.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

152.    The conduct described above and throughout this Complaint took place within the State of Wisconsin and constitutes unfair business practices in violation of the Wisconsin Deceptive Trade Practices Act, 100.18 (hereinafter "DTPA").

153.    The DTPA applies to the claims of Plaintiffs and all Wisconsin Class members because the conduct which constitutes violations of the DTPA by Defendants occurred within the State of Wisconsin.

26

154.    Wis. Stat. § 100.18(1) provides, in relevant part:

> No person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of any real estate, merchandise, securities, employment, service or anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, . . . shall make, publish, disseminate, circulate, or place before the public, . . . in this state, . . . an advertisement, announcement, statement or representation of any kind to the public relating to such . . . sale . . . or such real estate, merchandise, securities, service or employment . . . , which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

155.    Defendants are a "corporation" under the meaning of the DTPA.

156.    Plaintiffs and Wisconsin Class members constitute the "public" under the meaning of the DTPA.

157.    Defendants' Windows constitute "merchandise" under the meaning of the DTPA.

158.    Defendants engaged in untrue, deceptive or misleading statements of fact in violation of the DTPA when, in selling and advertising the Windows, they knew that there were defects in the Windows which would result in water damage, ensuing other property damage, yet they continued to put their Windows in the stream of commerce.

159.    Defendants engaged in untrue, deceptive or misleading statement of aforementioned material facts with the intent that others, such as Plaintiffs, Plaintiffs' builder, Class members, Class members' builders, and/or the general public would rely upon the untrue, deceptive or misleading statements of material facts and purchase Defendants' Windows containing said design defect.

160. Plaintiffs, Plaintiffs' builder, Class members, and Class members' builders would not have purchased the Windows had they known or become informed of the material defects in the Windows.

161. Defendants' untrue, deceptive or misleading statements of material fact as alleged herein constitute fraudulent misrepresentations within the meaning of the DTPA.

162. Defendants have violated the DTPA by fraudulently misrepresenting the quality of their Windows.

163. Defendants either knew, or should have known, that the Windows were defectively designed and/or manufactured and would allow water intrusion, which would result in severe damages to the structures, such that the structures were not as represented to be as alleged herein.

164. Upon information and belief, Defendants knew that, at the time the Windows left their control, the Windows contained the defect described herein resulting in water intrusion and wood rot. At the time of the sale, the Windows contained design and construction defects. The defects reduced the effectiveness and performance of the Windows and rendered the Windows unable to perform the ordinary purpose for which they are used, as well as caused the resulting damage described herein.

165. Further, as detailed above, upon Plaintiffs' discovery of water intrusion and filing of a warranty claim, Defendants represented and assured Plaintiffs that the problem would be rectified. However, Defendants have failed to act to rectify the problem and/or honor their warranties and, instead, Plaintiffs continue to suffer from water intrusion as a result of the defects.

166. As a direct and proximate cause of the violation of the DTPA, described above, Plaintiffs and members of the Class have been injured in that they have purchased homes or other structures with the defective Windows based on nondisclosure of material facts alleged above. Had

Plaintiffs and Class members known the defective nature of the Windows used on their structures, they would not have purchased their structures, or would have paid a lower price for their structures.

167.    Defendants engaged in untrue and deceptive methods of advertising and trade practices in conducting their businesses, which violates the DTPA. This unlawful conduct is continuing, with no indication that Defendants will cease.

168.    As a direct and proximate result of Defendants' unfair and deceptive methods of advertising and trade practices, Plaintiffs and other Class members will suffer damages, which include, without limitation, costs to inspect, repair or replace their Windows and other property, in an amount to be determined at trial.

169.    As a direct and proximate result of Defendants' violation of Wis. Stat. § 100.18, Plaintiffs and the Class members have suffered and continue to suffer damages. Plaintiffs and the Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

## COUNT V
## FRAUDULENT MISREPRESENTATION

170.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

171.    Defendants falsely and fraudulently represented to Plaintiffs, the Class members, and/or the consuming public in general that Defendants' Windows would be free from defects and fit for their customary and normal use.

172.    Defendants falsely represented to purchasers, consumers, and Window owners that the Windows were warranted against defects in material and workmanship when, in fact, the

limited warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows.

173.     When said representations were made by Defendants, upon information and belief, they knew those representations to be false and they willfully, wantonly, and recklessly disregarded whether the representations were true.

174.     These representations were made by Defendants with the intent of defrauding and deceiving Plaintiffs, Class members and/or the consuming public, all of which evinced reckless, willful, indifference to the safety and welfare of Plaintiffs and Class members.

175.     At the time the aforesaid representations were made by Defendants, Plaintiffs and the Class members were unaware of the falsity of said representations and reasonably believed them to be true.

176.     In reliance upon said representations, Defendants' Windows were installed and used on Plaintiffs' and Class members' properties, thereby causing Plaintiffs and the Class members to sustain damages and injury to their property and/or to be at an increased risk of sustaining damage and injury in the future.

177.     Defendants knew and were aware, or should have been aware, that their Windows were defective and not fit for their customary and normal use.

178.     Defendants knew, or should have known, that Defendants' Windows had a potential to, could, and would cause severe damage and injury to property owners.

179.     Defendants brought their Windows to the market and acted fraudulently, wantonly and maliciously, to the detriment of the Plaintiffs and the Class members.

180.     By reason of the foregoing, Plaintiffs and the Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VI
## FRAUDULENT CONCEALMENT

181.   Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

182.   Defendants knew or should have known that the Windows were defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers.

183.   Defendants fraudulently concealed from and/or intentionally failed to disclose to Plaintiffs and the Class that the Windows were (and are) defective.

184.   Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale. The defect is latent and not something that Plaintiffs or Class members, in the exercise of reasonable diligence, could have discovered independently prior to purchase, because it is not feasible.

185.   Defendants had the capacity to, and did, deceive Plaintiffs and Class members into believing that they were purchasing Windows free from defects.

186.   Defendants undertook active and ongoing steps to conceal the defect. Plaintiffs are aware of nothing in Defendants' advertising, publicity or marketing materials that disclosed the truth about the defect, despite Defendants' awareness of the problem.

187.   The facts concealed and/or not disclosed by Defendants to Plaintiffs and the Class members are material facts in that a reasonable person would have considered them important in deciding whether to purchase (or to pay the same price for) the Windows from their builders.

188.   Defendants intentionally concealed and/or failed to disclose material factors for the purpose of inducing Plaintiffs and the Class to act thereon.

189.     Further, upon notification from Plaintiffs about water intrusion, Defendants failed to inform Plaintiffs of the defect and failed to rectify the problem despite assurances that they would do so.

190.     Plaintiffs and the Class justifiably acted or relied upon the concealed and/or nondisclosed facts to their detriment, as evidenced by their purchase of the Windows or propertie with the Windows.

191.     Plaintiffs and Class members suffered a loss of money in an amount to be proven at trial as a result of Defendants' fraudulent concealment and nondisclosure because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact that they would be free from defects; and (c) the Windows did not perform as promised. Plaintiffs also would have initiated this suit earlier had the defect been disclosed to them

192.     By reason of the foregoing, Plaintiffs and Class members suffered, and continue to suffer, financial damage and injury.

## COUNT VII
## STRICT LIABILITY

193.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

194.     At all times relevant to this Complaint, Defendants were in the business of designing, manufacturing, marketing, distributing and/or selling Windows and had a statutory duty of care.

195.     Defendants breached this duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they allow water to intrude into the interior

of residences or buildings, resulting in damage to the Windows and consequential damage to the structure into which the Windows are installed.

196.     Defendants breached their duty because their Windows are defectively designed and manufactured and are unreasonably dangerous in that they rot, degrade, and otherwise fail, thereby allowing air and water to intrude into the interior of the residence and cause damage to the Windows and consequential damage to the structure into which the Windows are installed.

197.     Were the defects known at the time of design and manufacture, a reasonable person would conclude that the utility of the product did not outweigh the risk inherent in marketing a product designed and manufactured in that manner.

198.     Feasible alternatives existed to make the Windows safer for intended use at the time of design. Defendants were knowledgeable about the products and aware or should have been aware that feasible alternatives existed which would maintain the usefulness of the Windows and eliminate the harm.

199.     The Windows reached the Plaintiffs and Class members, and were intended to reach the Plaintiffs and Class members, without substantial change in the condition in which they were sold.

200.     The defect in the Windows was present when it left the Defendants' control.

201.     Defendants are strictly liable for having designed, manufactured, marketed, distributed, and sold the Windows, which were defective, to the Plaintiffs and Class members.

202.     As a direct, foreseeable, and proximate result of the sale of the defective Windows to Plaintiffs and Class members, the Plaintiffs and Class members have suffered significant physical damage to their properties, other contamination and deterioration, as well as diminution in the value of the properties.

**COUNT VIII**
**UNJUST ENRICHMENT**

203.     Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegation as through fully set forth herein. This count is plead in the alternative to Plaintiffs' contract-based claims.

204.     Plaintiffs and Class members conferred a benefit on Defendants when they purchased the Windows.

205.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs' and Class members' purchases of the Windows, the retention of which under these circumstances, is unjust and inequitable because Defendants' Windows were (and are) defective in design, were not fit for their ordinary and intended use, and performed in accordance with neither the advertisements, marketing materials and warranties disseminated by Defendants nor the reasonable expectations of ordinary consumers and caused  Plaintiffs and Class members to lose money as a result thereof.

206.     Plaintiffs and Class members suffered a loss of money as a result of Defendants' unjust enrichment because: (a) they would not have purchased the Windows on the same terms if the true facts concerning the defective Windows had been known; (b) they paid a price premium due to the fact that the Windows would be free from defects; and (c) the Windows did not perform as promised.

207.     Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

208.    Plaintiffs and the Class members are entitled to restitution of, disgorgement of, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by the Defendants from their deceptive, misleading, and unlawful conduct.

**COUNT IX**
**DECLARATORY RELIEF 28 U.S.C. § 2201**

209.    Plaintiffs, individually and on behalf of all others similarly situated, readopt and incorporate by reference all foregoing allegations as though fully set forth herein.

210.    Defendants have acted or refused to act on grounds that apply generally to the Injunctive Relief Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole within the meaning of Fed. R. Civ. P. 23(b)(2).

211.    Plaintiffs seek a ruling that:

a)  the Windows have a defect which results in a premature failure and premature rotting of wood component of the sash. The rotting of the wood component may not be detectable until after the warranty provided by Defendants has expired. The Court finds that this defect is material and requires disclosure for all of these Windows;

b)  the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Defendants has expired. The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;

c)  certain provisions of Defendants' warranty are void as unconscionable;

d)  any limitation on the warranty is removed;

e)  the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;

35

f) Defendants shall re-audit and reassess all prior warranty claims, including claims previously denied, in whole or in part, where the denial was based on warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and

g) Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether wood rot is manifest. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

WHEREFORE, Plaintiffs, individually and on behalf of others similarly situated, pray for a judgment against Defendants as follows:

1. For an Order certifying the Classes, pursuant to Fed. R. Civ. P. Rule 23, appointing Plaintiffs as representatives of the Classes, and appointing the law firms representing Plaintiffs as counsel for the Classes;

2. For compensatory damages sustained by Plaintiffs and the Damages Class;

3. For equitable and/or injunctive relief for the Declaratory Relief Class;

4. For payment of costs of suit herein incurred;

5. For both pre-judgment and post-judgment interest on any amounts awarded;

6. For punitive damages;

7. For payment of reasonable attorneys' fees and expert fees as may be allowable under applicable law; and

8. For such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Plaintiffs, individually and on behalf of the Class, hereby demand a trial by jury as to all issues so triable.

Dated: August 26, 2015                                   Respectfully submitted,


                                                         s/James C. Shah
                                                         James C. Shah (Bar No. 1083846)
                                                         **SHEPHERD, FINKELMAN, MILLER
                                                           & SHAH, LLP**
                                                         735 N. Water Street
                                                         Suite 1222
                                                         Milwaukee, WI 53202
                                                         Phone:  (414) 226-9900
                                                         Email:  jshah@sfmslaw.com

                                                         Jonathan Shub
                                                         **Kohn Swift & Graf, P.C.**
                                                         One South Broad Street
                                                         Suite 2100
                                                          Philadelphia, PA 19107
                                                         Phone:  (215) 238-1700
                                                         Email:  jshub@kohnswift.com

                                                         Daniel K. Bryson
                                                         Matthew E. Lee
                                                         **WHITFIELD BRYSON & MASON LLP**
                                                         900 W. Morgan Street
                                                         Raleigh, NC 27609
                                                         Phone: (919) 600-5000
                                                         Email: dan@wbmllp.com
                                                                 matt@wbmllp.com

                                                         *Attorneys for Plaintiff and Proposed Class*