IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| THOMAS DAVIA and JEANNE DAVIA, on behalf of themselves and all others similarly situated, | ) ) ) ) | Case No.  2:15-cv-01041-LA |
| Plaintiffs, | ) ) | **AMENDED MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'** |
| v. | ) ) ) | **PARTIAL MOTION TO DISMISS THE COMPLAINT** |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, And WOODGRAIN MILLWORK, INC., | ) ) ) ) | |
| Defendants. | ) | |

## <u>INTRODUCTION</u>

This is a product defect case in which the Plaintiff homeowners (the Davias) allege that windows in their homes manufactured by Defendant The Windsor Window Company ("Windsor") suffer from design defects that permit water intrusion. The Davias correctly allege that Windsor offered an express warranty to any homeowner who purchased a home containing Windsor windows, and the Davias' claims rise or fall based on the terms of the applicable express warranty.

Despite pleading the applicability and breach of an express warranty, however, the Davias try to distance themselves from the express warranty, apparently because they do not like the limitations in it.  They do this by asserting eight additional claims, generally premised on tort, fraud, and quasi-contract theories.  But the law does not permit such claims when an express warranty governs and the fraud allegations are based on nothing more than conclusory statements.

In the end, the express warranty claim too will fail, but that is not the subject of this motion to dismiss. Rather, Defendants move to dismiss the remaining eight claims.[1]

## **FACTS**[2]

Plaintiffs Thomas and Jeanne Davia hired a builder to build a house, which the builder completed in or around March 2013. Compl. ¶¶ 55–57. During construction, the builder purchased and installed aluminum-clad windows manufactured by Windsor.[3] Compl. ¶¶ 55, 58, 128-30.[4] In the home purchase agreement, the builder assigned to the Davias "the manufacturers' warranties, including window warranties," which "formed part of the basis of the bargain at the time the home was purchased." Compl. ¶¶ 128–30.

---

[1] This partial motion to dismiss postpones the date on which Defendants must answer the complaint until "14 days after" this Court rules on Defendants' motion. *See* Fed. R. Civ. P. 12(a)(4); *Brocksopp Eng'g, Inc. v. Bach-Simpson Ltd.*, 136 F.R.D. 485, 486 (E.D. Wis. 1991) ("[A] partial 12(b) motion enlarges the time to file an answer."); *see also Talbot v. Sentinel Ins. Co.*, No. 2:11-CV-01766-KJD, 2012 WL 1068763, at *3–5 (D. Nev. Mar. 29, 2012) (collecting cases: "This Court agrees with the majority of courts that have held that a pending motion to dismiss, although it may only address some of the claims alleged, tolls the time to respond to all claims under Rule 12(a)(4).").

[2] In accordance with the standard of review for this motion to dismiss, Defendants recite the facts in the light most favorable to the Complaint and, for this motion only, assume the facts in that light to be true. Defendants, in doing so, do not concede the truth of any allegation and reserve the right to later challenge the veracity of the allegations.

[3] In their Complaint, the Davias blur a critical distinction between Defendant Windsor, which manufactures and sells the windows, and Defendant Woodgrain, which plays no role in that process. Defendants' joint motion to dismiss does not ask this Court to resolve this dispute at this stage. But Defendants reserve the right to correct this mistaken characterization in later litigation. For purposes of this motion, the claims against Woodgrain must be dismissed for the same reasons the claims against Windsor must be dismissed.

[4] At one point, the Davias seem to suggest that they *and* their builder bought the windows. Compl. ¶ 57 ("In purchasing Defendants' Windows over all other brands of windows, the Davias and their builder . . . ."). But, reading the Complaint as a whole, they are alleging that only their builder bought the windows. *See* Compl. ¶¶ 128–130 (alleging that Defendants sold the windows to the Davias' builder, the Davias are third-party beneficiaries of the contract between Defendants and the builder, and the builder assigned the Davias the window warranty in their purchase agreement).

That warranty is the 2012 Pinnacle Limited 20/10 Warranty, which is "Effective on Pinnacle products manufactured after 8-1-2012."[5]  The warranty provides, in part, as follows:

> EXCLUSIONS – The following items or conditions are specifically excluded from the remedies provided by this warranty:
>
> 3. Remedies requested for damage caused by or adjustment required from . . .
>
> > d. Condensation and damage caused by the failure to resolve condensation.
>
> . . . .
>
> 13. Remedies requested for Painted White interior finish related to . . . condensation[.]

In or around December 2013, the Davias "noticed moisture in the Windows."  Compl. ¶ 61.  The Davias have described the problem as developing into "excessive condensation and moisture on [the] Windows."  Compl. ¶ 64.  In "the summer of 2014," the Davias made a warranty claim to Windsor. Compl. ¶ 62.  Windsor sent Michael Perrin to the house, where he inspected the windows.  Compl. ¶ 62.  "Perrin assured the Davias that Windsor would rectify the problem with the Windows," but Windsor did not get back in touch with Davias, "despite the Davias reaching out to Windsor repeatedly."  Compl. ¶¶ 62–63.  The damages that the Davias

---

[5] This warranty, attached to this motion to dismiss, applied to the subject windows. *See* Declaration of Rick McMillen, Oct. 30, 2015, Exhibit A.  This Court may consider the warranty because it is referred to by the Complaint and central to the Davias' warranty claims. *See Ball v. Sony Electronics Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *1 (W.D. Wis. Sept. 28, 2005) ("Although the warranty itself was not appended to the complaint, it is properly considered part of the pleadings because the warranty is referred to in the plaintiffs' complaint and is central to their claims."); *Hongbo Han v. United Contl Holdings, Inc.*, 762 F.3d 598, 603 n.1 (7th Cir. 2014) ("The plaintiff attached the MileagePlus contract in response to the motion to dismiss. Because the terms of the MileagePlus contract are central to Han's complaint, we may consider them in ruling on a motion to dismiss."). Moreover, "[t]o the extent that the contracts contradict the Complaint, the contracts trump the facts or allegations presented in the Complaint." *Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

allege are to the windows, the home's structure, and to unspecified "personal property." Compl. ¶¶ 3, 48, 53, 65.

The Davias filed their Complaint against Defendants on August 26, 2015. They claim negligence/gross negligence (Count I), breach of implied warranty of merchantability (Count II), breach of express warranty (Count III), violation of the Wisconsin Deceptive Trade Practices Act (Count IV), fraudulent misrepresentation (Count V), fraudulent concealment (Count VI), strict liability (Count VII), unjust enrichment (Count VIII), and declaratory relief (Count IX). The Complaint fails to state a claim as to each of these counts.

## ANALYSIS

### I.     Standard of Review

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, (2007). The *Twombly–Iqbal* standard governs this analysis. Under it, the Complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quotation omitted). Although short and plain, the statement must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. Allegations are inadequate when they are limited to "labels and conclusions," "a formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, and "'naked assertion[s],'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

### II.    The tort claims (Counts I, V, VI, and VII) must be dismissed.

#### A.  The economic loss doctrine bars the tort claims (Counts I, V, VI, and VII).

The Davias allege four torts: negligence (Count I), fraudulent misrepresentation (Count V), fraudulent concealment (Count VI), and strict liability (Count VII). But they are seeking to recover only alleged economic losses: alleged damage to "the Windows and main structure" of

the house in which the windows were installed. Compl. ¶¶ 3, 48, 53, 65. *See Linden v. Cascade Stone Co.*, 2005 WI 113, ¶29, 283 Wis. 2d 606, 699 N.W.2d 189 (damage caused by stucco and shingling was only economic loss because it was damage "only [to] other components of the house"); *Midland Builders, Inc. v. Semling-Menke Co.*, 2005 WI App 193, 298 Wis. 2d 132, 703 N.W.2d 383, at *3 n.4 (unpublished) ("[T]he homeowner could not recover in tort for the cost to repair or replace the rotting windows because his damages were economic losses."); *Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*, 2002 WI App 2005, ¶27, 257 Wis. 2d 511, 651 N.W.2d 738 (damage caused by windows to "interior and exterior walls and casements" was only economic loss because "these are but other component parts in" the house in which the windows are integrated).[6] The economic loss doctrine bars these claims.

"[T]he economic loss doctrine prevents parties from making an 'end run' around the contracts they have negotiated by suing third parties, such as manufacturers, who are one step removed from the contracting parties." *S & C Bank v. Wisconsin Cmty. Bank*, 2008 WI App 51, 747 N.W.2d 527, at *5 (unpublished). Under it, "a purchaser of a product cannot recover from a

---

[6] The Davias also make a cursory allegation of damages to unspecified "other personal property." Compl. ¶ 65. But this type of vague, conclusory pleading has been repeatedly rejected by federal courts when applying the economic loss rule, as the *Twombly–Iqbal* standard requires. *See Twombly*, 550 U.S. at 555, 557 (prohibiting complaints from surviving a motion to dismiss based on mere "labels and conclusions" and "naked assertion[s]"); *In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, 22 F. Supp. 3d 1322, 1327 (N.D. Ga. 2014) ("Although they generally allege damage to 'other property,' this is too ambiguous. Indeed, this is precisely the 'formulaic recitation of the elements of a cause of action' held insufficient to survive a motion to dismiss.") (quoting *Twombly*, 550 U.S. at 555); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig.*, No. 8:11-CV-02926-JMC, 2013 WL 1282219, at *7 (D.S.C. Mar. 27, 2013) (applying Minnesota law, concluding that, "[o]ther than conclusory statements concerning speculative and hypothetical damage to Haner's property and that of the putative class members, the court finds that Haner has failed to sufficiently allege any damage to 'other property'"); *Naparala v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 WL 2379492, at *4–5 (D.S.C. May 19, 2015) (similar); *Walters v. Pella Corp.*, No. 2:14-CV-00544-DCN, 2015 WL 2381335, at *9 (D.S.C. May 19, 2015) (similar); *In re: MI Windows & Doors, Inc. Prods. Liab. Litig.*, 908 F. Supp. 2d 720, 725–726 & n.2 (D.S.C. 2012) (similar).

manufacturer on a tort theory for damages that are solely economic." *Linden*, 2005 WI 113 at ¶ 6 (quotation omitted). Economic losses are what "results either from a product failing in its intended use or from a product failing to live up to a contracting party's expectations." *Below v. Norton*, 751 N.W.2d 351, 358 (Wis. 2008) (quotation omitted).

The economic loss doctrine "applies to building construction defects when, as here, the defective product is a component part of an integrated structure or finished product." *Linden*, 2005 WI 113 at ¶28. To that end, the doctrine bars tort claims against a window manufacturer based on losses allegedly caused by the window to the window and the house in which it was installed. *See id.*, following *Bay Breeze*, 2002 WI App 205 at ¶¶25-26 ("[T]he homeowners purchased a finished product, their condominium units, the quality of which fell below expectations. While the Association argues that the defective windows caused damage to interior and exterior walls and casements, these are but other component parts in a finished product. Because of the integral relationship between the windows, the casements and the surrounding walls, the windows are simply a part of a single system or structure, having no function apart from the buildings for which they were manufactured. Although the condominium units may have suffered incidental damage as a result of the failed windows, this does not take a commercial dispute outside the economic loss doctrine.") (citations omitted); *Midland Builders*, 2005 WI App 193 at *2–*3 (economic loss rule barred "negligence and strict-responsibility-misrepresentation claims" because "the crux of Midland's claim for repair costs [was] that the homes were damaged because an ingredient, Semco windows, was of insufficient quality and did not work for Midland's intended purpose").

Fraud claims are treated no differently. *See Below*, 2008 WI 77 at ¶20 ("[T]he [economic loss rule] bars common-law claims for intentional misrepresentation in real estate transactions

that occur in the context of residential, or noncommercial, sales."); *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000) ("Wisconsin's economic loss doctrine bars Home Valu's intentional misrepresentation claim that it was fraudulently induced into executing the Amendment.").

Therefore, the economic loss doctrine bars Counts I, V, VI, and VII.

**B. The fraud claims (Counts V and VI) are insufficiently pleaded under Fed. R. Civ. P. 9(b).**

The fraud-based tort claims are fraudulent misrepresentation (Count V) and fraudulent concealment (Count VI). The Davias base both of these claims on a common theory: that Defendants fraudulently failed to disclose facts about the windows. Compl. ¶¶ 177, 182. In addition, for their fraudulent misrepresentation claim, they allege that Defendants fraudulently failed to disclose facts about the windows' warranty. Compl. ¶ 172. Because the allegations are conclusory and fall woefully short of rule 9(b)'s heightened pleading standard for fraud, these claims must be dismissed.

Rule 9(b) imposes a heightened pleading standard for fraud, requiring that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This heightened pleading standard applies to fraudulent misrepresentation and fraudulent concealment claims. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 568–69 (7th Cir. 2012).

> While the precise level of particularity required under Rule 9(b) depends upon the facts of the case, the pleading ordinarily requires describing the who, what, when, where, and how of the fraud.
>
> . . . .
>
> By requiring the plaintiff to allege the who, what, where, and when of the alleged fraud, the rule requires the plaintiff to conduct a precomplaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and extortionate.

*Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 738 (7th Cir. 2014) (quotations omitted); *see also Wigod*, 673 F.3d at 569 (explaining that rule 9(b) is "a response to the great harm to the reputation of a business firm or other enterprise a fraud claim can do") (quotation omitted).

Entirely absent from Davias' Complaint is the who, what, when, where, or how of the alleged fraud. Consequently, as pleaded, we have no reason to believe that these claims are anything more than a "defamatory and extortionate" attempt at a class action settlement, *see Camasta*, 761 F.3d at 738, accompanied by a fishing expedition, *see Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994) ("[Rule 9(b)] is said to serve three main purposes: (1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim to the adverse party.").

One particularly fatal omission from the Davias' Complaint is any allegation indicating that Defendants had a duty to disclose. "[A] nondisclosure is not actionable as a misrepresentation tort unless there is a duty to disclose." *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, ¶12, 270 Wis. 2d 146, 677 N.W.2d 233, 238. "The usual rule is that there is no duty to disclose in an arm's-length transaction." *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶15, 283 Wis. 2d 555, 699 N.W.2d 205. The Wisconsin Supreme Court has, in "a narrow holding," held that "a subdivider-vendor of a residential lot has a duty to a non-commercial purchaser to disclose facts which are known to the vendor, which are material to the transaction, and which are not readily discernible to the purchaser." *Tietsworth*, 2004 WI 32 at ¶14 (quotation omitted). But that was "premised on certain policy considerations present in non-commercial real estate transactions." *Id.* (quotation omitted). The Wisconsin Supreme Court has declined to extend this duty to sales of consumer goods. *See Id.*.

Windsor never sold real estate; it sold only windows to a third-party distributor that eventually found their way into the hands of the builder who built the Davias' house. That relationship is insufficient to raise a duty to disclose under existing Wisconsin law.

The Wisconsin Supreme Court has observed that "a duty to disclose a material fact may arise in business transactions." *Kaloti Enters.*, 2005 WI 111 at ¶15. But Defendants and the Davias never transacted business. They never even met. And the duty to disclose only applies to "*a party* to a business transaction." *Id.* at ¶20 (emphasis added). To that point, to be such "a party" on whom a duty to disclose can be imposed, an entity must be capable of "know[ing] that the other party is about to enter into the transaction under a mistake as to the fact." *Id.* It would be impossible for the typical upstream building-products manufacturer (like a window manufacturer) to ever "know[] that [a homebuyer] is about to [buy a house in which the manufacturer's products were installed]" or to know what the homebuyer knows or believes. *Id.*

In sum, under Rule 9(b), the non-disclosure fraud claims must be dismissed. They have not been pled with particularity. And they rely on a duty to disclose never recognized by Wisconsin state courts that turns on "a significant common-law policy issue." *Tietsworth*, 2004 WI 32 at ¶15. In that light, for this Court to recognize such a duty now would require this Court to impermissibly expand Wisconsin common law beyond its current borders.

Therefore, for this additional reason, the fraud-based tort claims (Counts V–VI) must be dismissed.

### III. The WDTPA claim (Count IV) must be dismissed because it is insufficiently pled and based on alleged nondisclosures.

The Davias base Count IV on Wis. Stat. § 100.18 of the Wisconsin Deceptive Trade Practices Act (WDTPA). The Davias base this claim on alleged "fraudulent misrepresentations." Compl. ¶ 161. WDTPA claims based on fraud are subject to Rule 9(b)'s heightened pleading

standard.  *See Hackel v. Nat'l Feeds, Inc.*, 986 F. Supp. 2d 963, 978 (W.D. Wis. 2013) (citing

*Ball*, 2005 WL 2406145, at *4).  Like the other fraud claims (Counts V–VI), this claim was

inadequately pleaded under Rule 9(b).  *Supra* Sec. II.B.

But even more critically, the WDTPA claim must be dismissed because the Davias base

it on alleged nondisclosures, Compl. ¶¶ 158, 166, which never are sufficient to support a

WDTPA claim.

> Wisconsin Statute § 100.18 forbids statements made to induce the sale of a
> product which include "any assertion, representation or statement of fact which is
> untrue, deceptive or misleading." This provision requires an affirmative
> statement, and is not violated by a failure to disclose a known defect.

*Ball*, 2005 WL 2406145, at *2 (citing *Tietsworth*, 2004 WI 32 at ¶45 ("[B]ecause a

nondisclosure is not an 'assertion, representation or statement of fact' for purposes of the DTPA,

and because the only affirmative assertions alleged in the amended complaint are mere puffery,

the plaintiffs have failed to state a claim under Wis. Stat. § 100.18.")); *accord In re Caterpillar,

Inc., C13 & C15 Engine Prods. Liab. Litig.*, No. 1:14-CV-3722 JBS-JS, 2015 WL 4591236, at

*39 (D.N.J. July 29, 2015) (applying Wisconsin law: "Plaintiffs' consumer protection claims in

the instant action are premised on an omission or a failure to disclose a known defect. Such a

claim is not permitted under the DTPA as plainly articulated by the Wisconsin Supreme Court.").

Therefore, the WDTPA claim (Count IV) must be dismissed.

**IV.    The implied warranty claim (Count II) must be dismissed because Article 2 of the
UCC does not apply and, regardless, the express warranty disclaims this warranty.**

**A.  Article 2 of the UCC does not apply to real estate transactions, like the Davias'.**

Count II is a breach-of-implied-warranty-of-merchantability claim.  That warranty arises

under Article 2 of Wisconsin's version of the Uniform Commercial Code (UCC).  Wis. Stat.

§ 402.314.  No equivalent common law implied warranty exists under Wisconsin common law.

*Compare  Getty v. Rountree*, 2 Pin. 379, 1850 WL 1713, at *4 (Wis. 1850) ("The law has been

long well settled, both in this country and in England, that on a sale and transfer of goods or chattels which are present and in view of the parties, no warranty of quality will be implied where none is expressly made."), *with C. Ray Miles Constr. Co. v. Weaver*, 373 S.E.2d 905, 906–07 (S.C. Ct. App. 1988) ("South Carolina, unique among all the states, . . . recognized an implied warranty of soundness," which was "the common law precursor to the implied warranty of merchantability."). And Article 2 does not apply to real estate transactions, like the real estate transaction through which the Davias bought their house from their builder. Compl. ¶¶ 128–30; *see Dittman v. Nagel*, 42 Wis. 2d 155, 161, 168 N.W.2d 190 (Wis. 1969) ("[O]nly the common law principles of warranty apply when realty is involved. Special warranty provisions included in the Uniform Sales Act and the Uniform Commercial Code specifically apply only to the sale of 'goods' and realty is not included in the definition of 'goods.'"). Therefore, and as further explained below, this claim must be dismissed.

Article 2 of the UCC applies only to transactions in goods. *See* Wis. Stat. § 402.102 (Article 2 of UCC applies only to "transactions in goods"); *see also Burke v. Nationstar Mortgage, LLC*, No. 3:14-CV-837, 2015 WL 4571313, at *7 (E.D. Va. July 28, 2015) ("[T]he U.C.C. expressly excludes the transfer of realty from its provisions.") (quotations omitted). To be a good, a thing must be "moveable at the time of identification in the contract for sale." Wis. Stat. § 402.105(1)(c). Windows begin as moveable things, which is why "the sale of the windows is a transaction in goods . . . governed by the [UCC]." *Selzer v. Brunsell Bros.*, 2002 WI App 232, ¶16, 257 Wis. 2d 809, 652 N.W.2d 806. But a house, which is not moveable, is not a good. *See, e.g.*, *Leno v. K & L Homes, Inc.*, 803 N.W.2d 543, 550 (N.D. 2011) ("A house affixed to real property is not a good that is moveable, and a contract does not become a contract for goods just because goods may be involved."). And, by the time a homebuyer buys a house,

the house's windows are no longer goods; they are rather "component parts in a finished product": the house itself. *See Linden*, 2005 WI 113 at ¶28, *quoting with approval Bay Breeze*, 2002 WI App 205 at ¶¶25-26 ("[T]he homeowners purchased a finished product, their condominium units, the quality of which fell below expectations. While the Association argues that the defective windows caused damage to interior and exterior walls and casements, these are but other component parts in a finished product. Because of the integral relationship between the windows, the casements and the surrounding walls, the windows are simply a part of a single system or structure, having no function apart from the buildings for which they were manufactured.") (citations omitted).

The Davias do not allege that they purchased the windows to be built into their home but that they purchased the finished house in which Windsor windows were installed. The Davias' house purchase was not a transaction in goods to which the UCC applies but, rather, a transaction in real estate. Indeed, under Wis. Stat. § 402.107(2),[7] a transaction that conveys a house cannot be a transaction that conveys goods, like windows, because the windows could not be severed from the house "without material harm thereto." *See* Wis. Stat. § 402.105 cmmts. ("This Article

---

[7] 402.107(2). Goods to be severed from realty: recording

(1) A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this Article if they are to be severed by the seller but until severance a purported present sale thereof which is not effective as a transfer of an interest in land is effective only as a contract to sell.

(2) A contract for the sale apart from the land of growing crops or other things attached to realty and *capable of severance without material harm thereto* but not described in subsection (1) or of timber to be cut is a contract for the sale of goods within this Article whether the subject matter is to be severed by the buyer or by the seller even though it forms part of the realty at the time of contracting, and the parties can by identification effect a present sale before severance.

Wis. Stat. § 402.107(1)–(2) (emphasis added).

in including within its scope 'things attached to realty' adds the further test that they must be capable of severance without material harm thereto."); *cf. Black's Law Dictionary* (10th ed. 2014) (defining "real property" as "excluding anything that may be severed without injury to the land").

And that is precisely the conclusion that courts throughout the country have drawn from identical versions of other states' UCCs. *See generally Nat'l Operating, L.P. v. Mut. Life Ins. Co. of New York*, 2001 WI 87, ¶30, 244 Wis. 2d 839, 630 N.W.2d 116 (because UCC should be uniform, "[w]e . . . rely on precedent from this and other jurisdictions in interpreting and applying the provisions of the U.C.C."). For example, in affirming dismissal of warranty claims brought by a condo buyer against a window manufacturer, the Illinois Court of Appeals concluded:

> Section 2–107(1) provides that in a contract for the sale of a structure or its materials, if the items are to be removed and severed from the realty by the seller, the items will be considered "goods."
>
> Windows may be goods when they are movable objects not attached to real estate; however, when by their physical annexation to real estate they have become, in legal contemplation, part of the real estate, they are no longer goods within the meaning of the UCC. Accordingly, we find the plaintiffs do not have a valid claim under the UCC.

*Weiss v. MI Home Prods., Inc.*, 877 N.E.2d 442, 445–46 (Ill. Ct. App. 2007). And Alabama's, Massachusetts's, South Carolina's, and Virginia's UCCs have been likewise construed. *See Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 7–9 (Ala. 2002) (affirming dismissal of implied-warranty-of-merchantability claim: "[I]n order to be considered a product within the meaning of the UCC, the [exterior-insulation-finishing system] must be capable of severance from the Kecks' home without causing material harm to the home."), *followed by Gordon v. Acrocrete, Inc.*, No. CIV.A. 05-0329-WS-M, 2006 WL 1096156, at *5–6 (S.D. Ala. Apr. 24, 2006); *Drieblatt v.*

*Osmose, Inc.*, No. 00-CV-11392-MEL, 2001 WL 197941, at *3 (D. Mass. Feb. 12, 2001) (dismissing implied-warranty-of-merchantability claim, citing "without material harm" provision and reasoning that "the Massachusetts UCC . . . exclude[s] coverage of the sale of realty" and that the plaintiff purchased the condo, not the plywood); *In re Anderson Cnty.*, 1976 WL 30581, at *1 (S.C.A.G. Jan. 5, 1976) ("Obviously severing the roof would create material harm thereto. Therefore, this office is of the opinion that a roof on a building is not a good within the meaning of the UCC and is, therefore, not covered by the warranty provisions of the UCC."); *Winchester Homes v. Hoover Universal, Inc.*, 30 Va. Cir. 22, at *6 n.3 & *7 (1992) (granting judgment notwithstanding the verdict for implied-warranty-of-merchantability claim: "Home appliances, such as dishwashers, refrigerators or air conditioning units, may remain 'goods' under the UCC. *See e.g.,* § 8.2-107. However, building components, such as mortar, dry-wall and plywood that are transformed into a building, would not stand on the same footing as 'goods' under the UCC.").

Even when not relying on the "without material harm thereto" provision, courts construing Maine's, Maryland's, North Dakota's, and Nevada's versions of the UCC—based on provisions identical to Wisconsin's version of the UCC—have concluded similarly: a transaction through which a homebuyer obtains a home is transaction in real estate, not goods. *See Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 99 n.14 (D. Mass. 1998) ("Maine courts recognize that contracts for the sale of real estate and the buildings attached to the real estate fall outside the purview of the U.C.C."); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 637 (Md. Ct. App. 1995) ("When the defendants sold plywood to the builders, it was unquestionably a sale of goods, giving the builders the right to sue under the UCC's implied warranties. The builders built houses, incorporating the plywood into the roofs. At this point, the plywood ceased

to be goods because it became a permanently affixed part of a townhouse and was thereafter not movable. Plaintiffs bought the plywood only as part of a sale of an entire house and only after the plywood had been permanently incorporated into the house. Therefore, when the plaintiffs bought their houses, the plywood was not goods; it was part of the real estate."); *Leno*, 803 N.W.2d at 550 ("A house affixed to real property is not a good that is moveable, and a contract does not become a contract for goods just because goods may be involved."); *cf. Platinum Unit-Owners' Ass'n v. Residential Constructors, LLC*, No. 2:14-CV-01076-GMN-GW, 2015 WL 1186530, at *4 (D. Nev. Mar. 16, 2015) ("[T]he UCC is limited to transactions in goods between buyers and sellers, it cannot be a basis for Plaintiff's [warranty] claims regarding real property.").

Because the Davias purchased a house and not moveable goods, Article 2 of the UCC does not apply, and the implied warranty claim (Count II) must be dismissed.

**B. Even if the UCC did apply, the express warranty disclaims the implied warranty.**

As Judge Posner has explained,

An implied warranty is something the law reads into a contract to save the parties the trouble of having to negotiate an express term; it is an off-the-rack term. If the parties don't like it, if they would prefer to custom-make their own term, they are free to do so, free that is to disclaim the implied warranty.

*Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1027 (7th Cir. 1993) (citing UCC § 2-316(3)(a)).

All that a disclaimer of the implied warranty of merchantability needs to do to be enforceable is be a written, "conspicuous" statement that says it is doing so.  Wis. Stat. § 402.316(2).  The UCC defines "conspicuous" terms as including the following:

1. A heading in capitals equal to or greater in size than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same or lesser size.

> 2. Language in the body of a record or display in larger type than the surrounding text, or in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language.

Wis. Stat. § 401.201(2)(f); *see L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 571 (7th Cir. 1993) ("In general, a disclaimer is conspicuous if it is in larger print or otherwise appears in contrasting type or color.").[8]

In that light, as a matter of law, the disclaimer of the implied warranty of merchantability is conspicuous, written as it is in a purple-shaded box and set off from and in contrast to the surrounding text, with bolded white lettering that contrasts with the surrounding text:

> LIMITS OF LIABILITY – Where lawful, this warranty is in lieu of all other warranties, expressed or implied, including any implied warranties of merchantability or fitness for a particular purpose.

McMillen Decl., Ex A.  This disclaimed the implied warranty of merchantability.  *See, e.g.*, *Recreatives, Inc. v. Myers*, 226 N.W.2d 474, 478–79 (Wis. 1975) (express warranty disclaimed implied warranty of merchantability when it provided, "'There are no warranties which extend beyond the description on the face hereof. No other warranty, whether express or implied, shall exist in connection with the sale or use of any all-terrain vehicle manufactured by Recreatives, Inc.'").

For this additional reason, the implied warranty claim (Count II) must be dismissed.

## V. The unjust enrichment claim (Count VIII) must be dismissed because an express warranty governs.

The Davias plead an unjust enrichment claim (Count VIII) "in the alternative to Plaintiffs' contract-based claims."  Compl. ¶ 203. But the existence of a governing express warranty bars this claim, even pled in the alternative. *See Carroll v. Stryker Corp.*, 658 F.3d 675,

---

[8] *as amended on denial of reh'g* (Dec. 8, 1993), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (U.S. 2014).

682 (7th Cir. 2011) ("In Wisconsin the quasi-contractual theories of quantum meruit and unjust enrichment are legal causes of action grounded in equitable principles and can be invoked only in the absence of an enforceable contract."); *Martin v. LG Electronics USA, Inc.*, No. 14-CV-83-JDP, 2015 WL 1486517, at *8 (W.D. Wis. Mar. 31, 2015) ("Martin's argument that dismissal is premature because he is permitted to plead in the alternative is similarly unavailing. Martin is correct that he may plead alternative theories of relief, but Martin's allegations of fact do not fit his alternative theory of equitable relief. He concedes that he has a warranty. A warranty is an express contract. Therefore, his unjust enrichment claim will be dismissed.") (citation omitted).

Therefore, the unjust enrichment claim (Count VIII) must be dismissed.

## VI. The declaratory and injunctive relief claim (Count IX) must be dismissed.

The Davias have presented in Count IX a wish list of things that they would like this court to declare or order as injunctive relief, including (but certainly not limited to) ordering Defendants to modify the express warranty and to "establish an inspection program and protocol, under Court supervision." Compl. ¶ 211(e), (g). The Davias' injunctive-relief wish list is entirely beyond the scope of the declaratory relief authorized by the declaratory relief statute, which is simply that the Court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a); *see Steffel v. Thompson*, 415 U.S. 452, 471 (1974) ("[E]ven though a declaratory judgment has 'the force and effect of a final judgment,' 28 U.S.C. s 2201, it is a much milder form of relief than an injunction. Though it may be persuasive, it is not ultimately coercive; noncompliance with it may be inappropriate, but is not contempt.") (quotation omitted); *Deveraux v. City of Chicago*, 14 F.3d 328, 331 (7th Cir. 1994) ("[B]ecause nothing in the declaratory judgment plaintiffs seek would bind the City or alter the legal

relationship of the parties, we conclude that the district court properly dismissed plaintiffs' action for failure to allege a case or controversy.").[9]

Nor is the injunction that the Davias seek (*see* Compl. ¶ 210) viable. The Davias based their injunction request on Fed. R. Civ. P. 23(b)(2), which allows "[a] class action [to be] maintained if Rule 23(a) is satisfied and if . . . the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." But "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (U.S. 2011). As the Seventh Circuit has explained,

> That the plaintiffs have superficially structured their case around a claim for class-wide injunctive and declaratory relief does not satisfy Rule 23(b)(2) if as a substantive matter the relief sought would merely initiate a process through which highly individualized determinations of liability and remedy are made; this kind of relief would be class-wide in name only, and it would certainly not be final.

---

[9] Even if the Davais' request could somehow be cognizable under the declaratory judgment statute, it would still fail to the extent that Davias seek to, through a declaratory judgment, resolve issues that will be resolved simply by resolving Davias' substantive claims. *See Collegians for a Constructive Tomorrow-Madison v. Regents of Univ. of Wisconsin Sys.*, 820 F. Supp. 2d 932, 952 (W.D. Wis. 2011) ("I conclude that this is not an appropriate case for declaratory relief. There are no ongoing violations of federal law, CFACT cannot recover damages for any violations that may have occurred in the past, and I do not see any way in which a declaratory judgment could serve a useful purpose (such as removing a cloud of uncertainty from over the plaintiff's rights)."). Moreover, Davias would be unable to base their request on any substantive claims that this Court dismisses in response to this motion. *See Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009) ("Although Congress has authorized courts to issue declaratory relief in some cases, this authority is merely procedural. The constitutional requirement of a justiciable case or controversy remains applicable. . . . [T]he federal courts have no authority to rule where the case or controversy has been rendered moot.") (citation omitted); *Ferguson-Kubly Indus. Servs., Inc. v. Circle Envtl., Inc.*, 409 F. Supp. 2d 1072, 1081 (E.D. Wis. 2006) ("A request for declaratory judgment is a procedural mechanism that relies, in this instance, upon substantive state law.").

*Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 499 (7th Cir. 2012).

In that light, the Davias' request is wholly unsupported by Rule 23(b)(2). Even if this Court agreed to oversee the extensive scheme that the Davias propose, the result would not be final injunctive relief. Rather, at most, it would provide potential litigants *notice* that, *if* they want to sue or otherwise seek relief from Defendants, they could do so. *See* Compl. ¶ 211(b), (g) ("[A]ll persons who own structures containing Windows are to be provided the best practicable *notice* of the defect[.] . . . . Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require Defendants to inspect, *upon request*, a Class member's structure to determine whether wood rot is manifest. *Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties*.") (emphasis added).

But "[t]his is not the stuff of a proper Rule 23(b)(2) class." *See Jamie S.*, 668 F.3d at 499 ("The relief sought here does not come close to satisfying Rule 23(b)(2)'s standard. That much is clear from the intricate remedial scheme ordered by the district court, which requires thousands of individual determinations of class membership, liability, and appropriate remedies. . . . [T]here can be no single injunction that provides final relief to the class as a whole. It is no answer to say that the June 9 remedial order affects the entire class; that order merely establishes a system for eventually providing individualized relief. It does not, on its own, provide "final" relief to any class member. Moreover, the remedial order requires class notice as a necessary element of its operation: Only those class members who respond are to be evaluated within the hybrid IEP system; nonresponders are unaffected. That the putative class members must *opt in* after notice and then be evaluated for membership in the class—*before* making a claim for entitlement to compensatory education—belies the notion that the court can provide

final injunctive relief to the class as a whole. This is not the stuff of a proper Rule 23(b)(2) class.") (citation omitted).

Therefore, Count IX must be dismissed.

**CONCLUSION**

Eight of the nine claims must be dismissed. The economic loss doctrine bars the tort claims (Counts I, V, VI, and VII), and the fraud-based tort claims are inadequately pleaded (Counts V and VI). The WDTPA claim (Count IV) is inadequately pleaded and impermissibly based on alleged non-disclosures. There is no basis for the implied warranty claim (Count II), because the UCC does not apply to a home sale, and, regardless, the express warranty disclaims the implied warranty. The unjust enrichment claim (Count VIII) is barred by the express warranty. And the declaratory-and-injunctive-relief claim (Count IX) is not cognizable on any legal basis.

In the end, if this Court grants this motion to dismiss, we will be left with only one claim remaining, the express warranty claim (Count III), which is, at most, all that this case is about.

Dated this 30th day of October, 2015.

**MICHAEL BEST & FRIEDRICH LLP**

By: *s/Joseph L. Olson*
      Paul E. Benson, SBN 1001457
      Joseph L. Olson, SBN 1046162
      100 East Wisconsin Avenue, Suite 3300
      Milwaukee, WI 53202-4108
      P: 414.271.6560
      F: 414.277.0656
      pebenson@michaelbest.com
      jlolson@michaelbest.com

ARTHUR, CHAPMAN, KETTERING, SMETAK
& PIKALA, P.A.
Michael P. North (MN #230716)
Sarah E. Bushnell (MN #326859)
500 Young Quinlan Building
81 South Ninth Street
Minneapolis, MN 55402-3214
P: (612) 339-3500
F: (612) 339-7655
mpnorth@ArthurChapman.com
sebushnell@ArthurChapman.com
(Admissions to be Sought)

*Attorneys for Defendants*
*Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc.*

000000-0120\18044485.1