# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN

THOMAS DAVIA and JEANNE DAVIA, )
on behalf of themselves and all others )
similarly situated, )
                                  )     Case No. 2:15-cv-01041-LA
              Plaintiffs, )
                                  )     Hon. Lynn S. Adelman
    v. )
                                  )
WINDSOR WINDOW COMPANY d/b/a )
WINDSOR WINDOWS AND DOORS, )
and WOODGRAIN MILLWORK, INC., )
                                  )
             Defendants. )
_____)

## PLAINTIFFS THOMAS AND JEANNE DAVIA'S OPPOSITION TO DEFENDANTS WINDSOR WINDOWS COMPANY AND WOODGRAIN MILLWORK, INC.'S MOTION TO DISMISS THE COMPLAINT

Dated: November 20, 2015

James C. Shah
SHEPHERD, FINKELMAN, MILLER
& SHAH, LLP
735 North Water Street, Suite 1222
Milwaukee, WI 53202
Telephone: (414) 226-9900
Facsimile: (866) 300-7367
jshah@sfmslaw.com

[Additional Counsel Listed on Signature Page]

***Attorneys for Plaintiffs***

# TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     SUMMARY OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        A.      Defendants' Windows And The Defect . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

        B.      Defendants; Representations And Knowledge Of the Defects  . . . . . . . . . . . . . . 3

        C.      The Express Warranty . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        D.      Plaintiffs' Experience . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III.    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        B.      There Are No Grounds To Dismiss The Negligence, Fraudulent
                Misrepresentation, Fraudulent Concealment, And Strict Liability Claims  . . . . . . 6

                1.      The Economic Loss Doctrine Does Not Apply  . . . . . . . . . . . . . . . . . . . 7

                2.      The Allegations Supporting Fraudulent Misrepresentation
                        And Fraudulent Concealment Meet Rule 9(b) And Establish
                        That Defendants Had A Duty To Disclose  . . . . . . . . . . . . . . . . . . . . . . . 9

        C.      The WDTPA Is Sufficiently Pled  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

        D.      Defendants' Breach Of Implied Warranty Arguments Should
                Be Ignored  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

                1.      The Implied Warranty Claim Is Premised On Contracts
                        Where The Windows Were Purchased As Goods  . . . . . . . . . . . . . . . . . 15

                2.      There Is Insufficient Evidence That Defendants Properly
                        Disclaimed The Implied Warranty In The Sales Contract . . . . . . . . . . . 17

-i-

E.      Plaintiffs Should Be Permitted To Plead Unjust Enrichment In
        The Alternative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

F.      The Declaratory And Injunctive Relief Claim Should Not Be
        Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        1.      The Requested Declaratory Relief Is Proper . . . . . . . . . . . . . . . . . . . . 20

        2.      Defendants' "Viability" Argument Is Premature And Unpersuasive . . . 23

G.      Plaintiffs Request Leave To Amend If The Court Finds Any Of
        The Claims Deficient . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

IV.     CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bausch v. Stryker Corp.*,
630 F.3d 546 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*,
2002 WI App 205, 257 Wis. 2d 511, 651 N.W.2d 738 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

*BCR Trucking, LLC v. Paccar, Inc.*,
2006 WL 3422681 (E.D. Wis. Nov. 28, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Bell v. PNC Bank, Nat. Ass'n*,
800 F.3d 360 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 26

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 9

*Below v. Norton*,
751 N.W.2d 351 (Wis. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Boatwright v. Walgreen Co.*,
2011 WL 843898 (N.D. Ill. Mar. 4, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Burke v. Nationstar Mortgage, LLC*,
2015 WL 4571313 (E.D. Va. July 28, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Bushendorf v. Freightliner Corp.*,
13 F.3d 1024 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*C. Ray Miles Const. Co. v. Weaver*,
373 S.E.2d 905 (Ct. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
761 F.3d 732(7th Cir. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Carroll v. Stryker Corp.*,
658 F.3d 675 (7th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

-iii-

*Citgo Petroleum Corp. v. Ranger Enterprises, Inc.*,
573 F. Supp. 2d 1114 (W.D. Wis. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Collegians for a Constructive Tomorrow-Madison v. Regents of Univ. of Wisconsin Sys.*,
820 F. Supp. 2d 932 (W.D. Wis. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Coltman v. Kase*,
2015 WI App 75, 870 N.W.2d 248 (Wis.App. Aug. 31, 2015) . . . . . . . . . . . . . . . . . . . . . 13

*Cornucopia Inst. v. U.S. Dep't of Agric.*,
560 F.3d 673 (7th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Cromeens, Holloman, Sibert, Inc. v. AB Volvo*,
349 F.3d 376 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Deveraux v. City of Chicago*,
14 F.3d 328 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22-23

*De Falco v. Vibram USA, Inc.*,
2013 WL 1122825 (N.D. Ill. Mar. 18, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-24

*Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*,
562 F. Supp. 2d 1009 (W.D. Wis. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*DMT S.A. v. Enercon Indus. Corp.*,
2008 WL 1869033 (E.D. Wis. Apr. 24, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Drieblatt v. Osmose, Inc.*,
2001 WL 197941 (D. Mass. Feb. 12, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Estate of Kriefall v. Sizzler USA Franchise, Inc.*,
2011 WI App 101, 335 Wis. 2d 151 (Wis. App. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Ferguson-Kubly Indus. Servs., Inc. v. Circle Envtl., Inc.*,
409 F. Supp. 2d 1072 (E.D. Wis. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Foman v. Davis*,
371 U.S. 178 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*,
85 F. Supp. 3d 1007 (E.D. Wis. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

-iv-

*Forst v. SmithKline Beecham Corp.*,
   602 F. Supp. 2d 960 (E.D. Wis. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Getty v. Rountree*,
   1850 WL 1713 (Wis. 1850) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Gevas v. Mitchell*,
   492 Fed. Appx. 654 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Goossen v. Estate of Standaert*,
   189 Wis. 2d 237, 525 N.W.2d 314 (Ct. App. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Gordon v. Acrocrete, Inc.*,
   2006 WL 1096156 (S.D. Ala. Apr. 24, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Home Valu, Inc. v. Pep Boys*,
   213 F.3d 960 (7th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*In re Anderson Cnty.*,
   1976 WL 30581 (S.C.A.G. Jan. 5, 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*,
   22 F. Supp. 3d 1322 (N.D. Ga. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

*In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig.*,
   2013 WL 1282219 (D.S.C. Mar. 27, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*In re: MI Windows & Doors, Inc. Products Liab. Litig.*,
   908 F. Supp. 2d 720 (D.S.C. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re MI Windows & Doors, Inc. Products Liab. Litig.*,
   2012 WL 5182416 (D.S.C. Oct. 18, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Indep. Trust Corp. v. Stewart Info. Servs. Corp.*,
   665 F.3d 930 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Jamie S. v. Milwaukee Pub. Sch.*,
   668 F.3d 481 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Johnson v. Meriter Health Servs. Employee Ret. Plan*,
   702 F.3d 364 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Case 2:15-cv-01041-LA   Filed 11/20/15   Page 6 of 36   Document 12

*Kaloti Enterprises, Inc. v. Kellogg Sales Co.*,
2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Keck v. Dryvit Sys., Inc.*,
830 So. 2d 1 (Ala. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Leno v. K & L Homes, Inc.*,
803 N.W.2d 543 (N.D. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Linden v. Cascade Stone Co.*,
2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 16

*L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*,
9 F.3d 561 (7th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Martin v. LG Elecs. USA, Inc.*,
2015 WL 1486517 (W.D. Wis. Mar. 31, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Mercado v. Mitchell*,
83 Wis. 2d 17, 264 N.W.2d 532 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Midland Builders, Inc. v. Semling-Menke Co.*,
2005 WI App 193, 287 Wis. 2d 132, 703 N.W.2d 383 (2005) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Morris v. Osmose Wood Preserving*,
667 A.2d 624 (Md. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Naparala v. Pella Corp.*,
2015 WL 2379492 (D.S.C. May 19, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Novell v. Migliaccio*,
2008 WI 44, 309 Wis. 2d 132, 749 N.W.2d 544 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Pella Corp. v. Saltzman*,
606 F.3d 391 (7th Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Platinum Unit-Owners' Ass'n v. Residential Constructors, LLC*,
2015 WL 1186530 (D. Nev. Mar. 16, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Case 2:15-cv-01041-LA   Filed 11/20/15   Page 7 of 36   Document 12

*Recreatives, Inc. v. Myers*,
  67 Wis. 2d 255, 226 N.W.2d 474 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*S & C Bank v. Wisconsin Cmty. Bank*,
  2008 WI App 51, 309 Wis. 2d 233, 747 N.W.2d 527 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Saltzman v. Pella Corp.*,
  2007 WL 844883 (N.D. Ill. Mar. 20, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Schmidt v. Bassett Furniture Indus.*,
  2009 WL 3380354 (E.D. Wis. Oct. 20, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Sebago, Inc. v. Beazer E., Inc.*,
  18 F. Supp. 2d 70 (D. Mass. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Selzer v. Brunsell Bros.*,
  2002 WI App 232, 257 Wis. 2d 809, 652 N.W.2d 806 (2002) . . . . . . . . . . . . . . . . . . . . . . 15, 16

*State v. Timblin*,
  2002 WI App 304, 259 Wis. 2d 299, 314, 657 N.W.2d 89 (2002) . . . . . . . . . . . . . . . . . . . . . . 13

*Steffel v. Thompson*,
  415 U.S. 452 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Taterka v. Ford Motor Co.*,
  86 Wis. 2d 140, 271 N.W.2d 653 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*Tietsworth v. Harley-Davidson, Inc.*,
  2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
  20 F.3d 771 (7th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

*Walters v. Pella Corp.*,
  2015 WL 2381335 (D.S.C. May 19, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Wausau Tile, Inc. v. Cty. Concrete Corp.*,
  226 Wis. 2d 235, 593 N.W.2d 445 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

-vii-

*Weiss v. MI Home Products, Inc.*,
  877 N.E.2d 442 (Ill. Ct. App. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Winchester Homes v. Hoover Universal, Inc.*,
  30 Va. Cir. 22 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**Rules**

Fed. R. Civ. P. 8(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 8(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Fed. R. Civ. P. 8(e)(2)-(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Fed. R. Civ. P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fed. R. Civ. P. 23(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

**Statutes**

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Wis. Stat. § 100.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Wis. Stat. § 402.105(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wis. Stat. § 402.314 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Wis. Stat. § 402.316(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

Plaintiffs, Thomas Davia and Jeanne Davia ("Plaintiffs" or "Davias"), respectfully submit this brief in opposition to Defendants, Windsor Window Company d/b/a Windsor Windows and Doors ("Windsor") and Woodgrain Millwork, Inc.'s ("Woodgrain") (together, "Defendants") Motion to Dismiss the Complaint ("Motion") (Dkt. No. 8).

## I.    INTRODUCTION

This proposed class action arises out of the defective windows that Defendants designed, manufactured, advertised, distributed, and sold.  These windows have a latent defect which causes them to have a propensity to leak, prematurely degrade, and otherwise fail.  As a result, Plaintiffs and members of the class (defined below) suffer damages not only from owning useless and broken windows, but also from the resulting injury to the surrounding walls, floors, and ceilings of the structures containing the windows, as well as other personal property.  In their Class Action Complaint ("Complaint" or "Compl."), Plaintiffs assert nine claims on behalf of themselves and the proposed class: Negligence/Gross Negligence (Count I); Breach of Implied Warranty of Merchantability (Count II); Breach of Express Warranty (Count III); Violation of the Wisconsin Deceptive Trade Practices Act, Wis. Stat. § 100.18 ("WDTPA") (Count IV); Fraudulent Misrepresentation (Count V); Fraudulent Concealment (Count VI); Strict Liability (Count VII); Unjust Enrichment (Count VIII); and Declaratory Relief, 28 U.S.C. § 2201 (Count IX).

In their Motion, Defendants attempt to winnow Plaintiffs' well-pled claims such that only the limited express warranty claim remains.  Defendants' Motion, however, is based on gross mischaracterizations of the allegations of the Complaint and the law.  Accordingly, for the reasons fully explained below, the Court should deny the Motion.

1

## II.    SUMMARY OF FACTS

### A.    Defendants' Windows And The Defect

Together, Windsor and Woodgrain, Windsor's parent corporation, designed, manufactured, marketed, advertised, warranted, and sold their wood and wood-clad windows ("Window" or "Windows") to Plaintiffs, Plaintiffs' builders, and consumers and builders in Wisconsin and throughout the United States.  Compl. ¶¶ 1, 6-10, 15.  These Windows were and are defective.  *Id.* ¶¶ 13, 46.  As a result of Defendants' design and manufacturing practices, there is a high probability the Windows will fail and it is likely that the Window sashes have already developed wood rot by the time the Windows leave the factory.  *Id.* ¶¶ 2, 13, 20-22.

The wood rot from the Windows infects the frames and adjoining structures unless repaired and replaced before the rot progresses to those components.  *Id.* ¶ 13.  But the defect is latent–the incipient wood rot is masked by the aluminum cladding of the Windows, and it takes some time for the rot to advance to the stage where it would become visible upon ordinary inspection.  *Id.* ¶¶ 3, 13.  By the time the wood rot advances to that stage, Defendants' limited warranty period has expired and substantial injury already has occurred.  *Id.* ¶ 13.  In addition to the wood rot, the Windows are also defective because they permit water to penetrate the Window components, where the water is then absorbed by the wood members and causes rot, premature degradation, leaking, and ultimately failure of the Windows' basic purpose of keeping out the elements.  *Id.* ¶¶ 16-17, 21, 46, 52.  This routine occurs well in advance of the expected useful lives of the Windows.  *Id.* ¶¶ 17-18, 47.

The defects causes severe damage to the Windows, other parts of the structure housing the Windows, as well as the homeowners' other property, including other personal property, and

2

devalues the house.  *Id.* ¶¶ 4-54, 60, 65, 107, 158, 168.

## B. Defendants' Representations And Knowledge Of the Defects

Defendants hold themselves to both the construction industry and the public at large as providers of superior, quality, and durable construction products, which include the Windows. *Id.* ¶ 14.  Based on their expertise and experience in window design and manufacturing, Defendants knew or should have known that the defects were present at the time the Windows left their control and that the Windows did not meet industry standards or a consumer's reasonable expectations.  *Id.* ¶¶ 24, 36, 39, 49-52.  Indeed, Defendants were put on further notice of the defects and resultant damage by homeowners across the country whose Windows' defects began to manifest.  *Id.* ¶¶ 38, 67.  But even with that knowledge, Defendants failed to adequately correct the defective design.  *Id.* ¶¶ 25-26.  Instead, Defendants represent and continue to represent in their express warranty and documents available to the public, including on Defendants' website, brochures, and marketing materials, that the Windows are free of defects and will be free of defects for at least 10 years.  *Id.* ¶¶ 34, 37, 50.

Due to the latent nature of the defects and Defendants' representations, Plaintiffs, Plaintiffs' builders, and consumers and builders in Wisconsin and throughout the United States are unaware of the defects until the defects manifest when the resulting damage is at an advanced stage.  *Id.* ¶¶ 3, 13, 16.  Plaintiffs and the Class members relied on Defendants' representations when they purchased the Windows or structures containing the Windows.  *Id.* ¶ 35.  As a result, Defendants had a duty to disclose the true and nature and condition of the Windows–which is material to Plaintiffs and Class members–based upon Defendants' exclusive knowledge of the defects and their active concealment thereof.  *Id.* ¶¶ 44, 182-189.  Notwithstanding this duty,

Defendants never warned or notified purchasers of the defects. *Id.* ¶¶ 27, 44.

### C. The Express Warranty

Defendants issue a standard, uniform, 10-year warranty with each Window sold that the Windows will be free from defects for at least 10 years. *Id.* ¶¶ 28-34. This express warranty, however, contains numerous limitations and exclusions that severely limits coverage and imposes unreasonable demands on homeowners. *Id.* ¶ 40. The warranty was not a negotiated contract, and many of its terms are unconscionable and should be unenforceable. *Id.* ¶¶ 40-41, 45, 84-49. Moreover, Defendants have engaged in a pattern and practice of failing to honor or discouraging warranty claims by failing to respond to homeowners, requiring the owner to pay for an inspection of the Windows, and/or requiring the homeowner to pay for all costs associated with repair or replacement of the Windows, including the labor. *Id.* ¶¶ 42-43, 45.

### D. Plaintiffs' Experience

Plaintiffs are citizens and residents of Wisconsin, and reside at 407 White Oaks Court, Green Lake, Green Lake County, Wisconsin. *Id.* ¶¶ 5, 55-56. Their home was built around March of 2013, at which time the Windows were installed. *Id.* ¶ 55. When choosing Defendants' Windows over those of their competitors, Plaintiffs and their builder relied on representations made by Defendants and Defendants' representatives that the Windows were of high quality and free from defects. *Id.* ¶¶ 35, 57. At the time the Windows were purchased, Plaintiffs were unaware that the Windows were defective. *Id.* ¶¶ 58-59. But in or around December 2013, Plaintiffs first noticed moisture in the Windows, which gradually began to exhibit worsening signs of moisture and wood rot as time went on. *Id.* ¶ 61.

In the summer of 2014, Plaintiffs notified Windsor to make a warranty claim to repair the

4

ever-worsening Windows.  *Id.* ¶ 62.  A representative from Windsor, Michael Perrin ("Mr. Perrin"), was sent and inspected Plaintiffs' home.  *Id.*  Mr. Perrin removed and replaced the Windows' trim and rusted nails, and assured Plaintiffs that Windsor would rectify the problems. *Id.*  Mr. Perrin's actions did not repair the Window's problems, and, in fact, caused additional leaking and related problems.  *Id.* ¶¶ 64, 66.  To date, Plaintiffs have not received any other response from Windsor regarding the Windows, despite Plaintiffs reaching out to Windsor repeatedly.  *Id.* ¶ 63.  Moreover, even though Defendants already knew of the Windows' defect in 2013 from complaints by other customers throughout the country, Defendants never disclosed that information and, instead, wrongfully concealed the defect from Plaintiffs.  *Id.* ¶ 67.

As a result of the defective Windows, water has intruded into Plaintiffs' home, causing property damage including, but not limited to, damage to surrounding walls, floors, and ceiling, as well as damage to Plaintiffs' other personal property.  *Id.* ¶ 65.  To recover for these damages, Plaintiffs bring this action on behalf of themselves and of the class or classes (collectively, "Class" or "Classes") as defined below:

INJUNCTIVE RELIEF CLASS:

All persons and entities that own structures in which Windsor's wood or wood clad Windows are installed.

DAMAGES CLASS:

All persons and entities that own structures in which Windsor's wood or wood clad Windows are installed.

(ALTERNATIVE) WISCONSIN DAMAGES CLASS:

All persons and entities that own structures located within the State of Wisconsin in which Windsor's wood or wood-clad Windows are installed.

5

(ALTERNATIVE) SOUTH DAKOTA DAMAGES CLASS:

All persons and entities that own structures located within the State of South Dakota in which Windsor's wood or wood-clad Windows are installed.

*Id.* ¶ 68.[1]

## III. ARGUMENT

### A. Standard Of Review

"To survive a Rule 12(b)(6) motion, a complaint must 'state a claim to relief that is plausible on its face.'" *Fond Du Lac Bumper Exch., Inc. v. Jui Li Enter. Co.*, 85 F. Supp. 3d 1007, 1009 (E.D. Wis. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "accept the complaint's factual allegations as true, but allegations in the form of legal conclusions are insufficient." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### B. There Are No Grounds To Dismiss The Negligence, Fraudulent Misrepresentation, Fraudulent Concealment, And Strict Liability Claims

Defendants argue that the tort claims - negligence, fraudulent misrepresentation, fraudulent concealment, and strict liability - should be dismissed because those claims are barred by the economic loss doctrine. (Dkt. No. 11 at 4-7.) Defendants also argue that the fraudulent misrepresentation and fraudulent concealment claims are insufficiently pled under Rule 9 of the Federal Rules of Civil Procedure and that Plaintiffs did not allege that Defendants had a duty to disclose that their Windows were defective. *Id.* at 7-9. None of these arguments have merit.

---

[1] These Classes exclude: a) any Judge or Magistrate presiding over this action and members of their families; b) any employees of Defendants; c) any entity in which Windsor has a controlling interest or which has a controlling interest in Windsor and its legal representatives, assigns, and successors; d) any person who has released Windsor or is currently in litigation with Windsor related to Windsor's wood or wood-clad Windows; and e) all persons who properly execute and file a timely request for exclusion from the Class. Compl. ¶ 68.

6

### 1.    The Economic Loss Doctrine Does Not Apply

Under Wisconsin law, "[t]he economic loss doctrine precludes a purchaser of a product from employing negligence or strict liability theories to recover from the product's manufacturer loss which is solely economic." *Wausau Tile, Inc. v. Cty. Concrete Corp.*, 226 Wis. 2d 235, 245-46, 593 N.W.2d 445, 451 (1999). "Economic loss is the loss in a product's value which occurs because the product 'is inferior in quality and does not work for the general purposes for which it was manufactured and sold." *Id.* But "[t]he economic loss doctrine does not preclude a product purchaser's claims of personal injury or damage other than the product itself." *Id.*, 226 Wis. 2d at 247, 593 N.W.2d at 451.

Here, the Complaint specifically alleges damage to "other property" (Compl. ¶¶ 4, 71(p), 107, 158, 168) and "other personal property," (*id.* ¶¶ 65, 107); in other words, "[d]amage other than the product itself." The allegations of damage to "other personal property" are sufficient to overcome the economic loss doctrine at the pleadings stage under Wisconsin law, which is evident from the authorities Defendants cite. *See, e.g.*, *Naparala v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 WL 2379492, at *4 (D.S.C. May 19, 2015) (applying Wisconsin law and stating that, "[i]n a similar multidistrict litigation involving windows, this court determined that allegations of damage to 'other property' were 'too vague' to survive the economic loss rule, while allegations of damage to 'other personal property,' although 'by no means highly detailed,' properly stated a claim for negligence"); *Walters v. Pella Corp.*, No. 2:14-CV-00544-DCN, 2015 WL 2381335, at *9 (D.S.C. May 19, 2015) (same); *In re: MI Windows & Doors, Inc. Products Liab. Litig.*, 908 F. Supp. 2d 720, 726 n.2 (D.S.C. 2012); (stating that while "allegations [of damage to 'other personal property'] are by no means highly

7

detailed, they sufficiently notify [defendant] as to the specific category of loss allegedly suffered by the plaintiffs," and are not "barred by the economic loss rule"); *In re MI Windows & Doors, Inc. Products Liab. Litig.*, No. 2:12-CV-02269-DCN, 2012 WL 5182416, at *4 n.1 (D.S.C. Oct. 18, 2012) (same).

Besides *Naparala*, *Walters*, and *In re: MI Windows & Doors, Inc. Prods. Liab. Litig.*, which found that allegations of "other personal property" were sufficient to overcome the economic loss rule as noted above, the authorities Defendants cite are not pertinent. The Wisconsin Supreme Court and Court of Appeals in *Linden v. Cascade Stone Co.*, 2005 WI 113, 283 Wis. 2d 606, 699 N.W.2d 189, *Midland Builders, Inc. v. Semling-Menke Co.*, 2005 WI App 193, 287 Wis. 2d 132, 703 N.W.2d 383 (unpublished), and *Bay Breeze Condo. Ass'n, Inc. v. Norco Windows, Inc.*, 2002 WI App 205, 257 Wis. 2d 511, 651 N.W.2d 738, discussed the applicability of the "integrated systems" rule, where the "defective 'component' at issue is predominantly services provided by a subcontractor in a mixed contract." *Linden*, 2005 WI 113, ¶ 26, 283 Wis. 2d at 623, 699 N.W.2d at 197; *see Midland Builders, Inc.,* 2005 WI App 193, ¶ 30; *Bay Breeze Condo. Ass'n, Inc.*, 2002 WI App 205, ¶ 28, 257 Wis. 2d at 528, 651 N.W.2d at 746. Here, Defendants do not, because they cannot, assert that the "other personal property" that the Windows have damaged falls under the "integrated system" rule. This is because the "other personal property" is distinct from and not a part of the house, *i.e.* the "integrated system." *See* Compl. ¶ 65 ("[t]he defective Windows allowed water to intrude into Davias' home, resulting in property damage to their home including, but not limited to, damage to surrounding walls, floors and ceiling, ***and also damage to other personal property***") (emphasis added).

Meanwhile, the court in *In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*,

8

22 F. Supp. 3d 1322 (N.D. Ga. 2014), applied the economic loss doctrine under South Carolina law to only allegations of "other property," not "other personal property," and the court in *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig.*, No. 8:11-CV-02926-JMC, 2013 WL 1282219 (D.S.C. Mar. 27, 2013), did the same, except under Minnesota law. *See In re Atlas Roofing Corp. Chalet Shingle Products Liab. Litig.*, 22 F. Supp. 3d at 1327 ("they generally allege damage to 'other property,' [which] is too ambiguous"); *In re Bldg. Materials Corp. of Am. Asphalt Roofing Shingle Products Liab. Litig.*, No. 8:11-CV-02926-JMC, 2013 WL 1282219, at \*6 (D.S.C. Mar. 27, 2013) (similar). Finally, in *S & C Bank v. Wisconsin Cmty. Bank*, 2008 WI App 51, ¶ 21, 309 Wis. 2d 233, 747 N.W.2d 527, there were no allegations of "other property" or "other personal property." *S & C Bank*, 2008 WI App 51, ¶ 21.[2]

### 2. The Allegations Supporting Fraudulent Misrepresentation And Fraudulent Concealment Meet Rule 9(b) And Establish That Defendants Had A Duty To Disclose

Defendants' argument that the Complaint's allegations fail to meet Rule 9(b) and accusation that the claims are nothing more than a "defamatory and extortionate" attempt at class settlement are baseless rhetoric relying on a very selective reading of the Complaint. "While Rule 9(b) does not require a plaintiff to plead facts that if true would show that the defendant's alleged misrepresentations were indeed false, it does require the plaintiff to state 'the identity of

---

[2] *A fortiori*, Defendants' citations to *Below v. Norton*, 751 N.W.2d 351 (Wis. 2008) and *Home Valu, Inc. v. Pep Boys*, 213 F.3d 960, 965 (7th Cir. 2000), for the proposition that the economic loss doctrine generally extends to fraud claims are irrelevant because, as discussed above, the allegations of damages to "other personal property" are sufficient to overcome the economic loss doctrine at the pleadings stage. Defendants also cite *Twombly*, 550 U.S. 555, which, of course, does not discuss the sufficiency of allegations of damages to "other property" to survive the economic loss doctrine.

9

the person making the misrepresentation, the time, place, and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 737 (7th Cir. 2014) (quotations omitted). "Fraudulent intent may be alleged generally." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 569 (7th Cir. 2012). The Complaint's allegations meet all the Rule 9(b) requirements to make out claims for fraudulent misrepresentation and fraudulent concealment.

The "who" is obviously Defendants. Compl. ¶¶ 34, 37, 171-179, 182-189. The "what" is that Defendants, with the intention and effect of deceiving Plaintiffs and members of the putative Class, represented that the "Windows will be free from defective materials and workmanship" and "are suitable and free from defects" and failed to disclose and concealed the fact that the Windows were actually defective. *Id.* ¶¶ 34-37, 57, 171, 175-176, 183, 187-190. In addition, for the fraudulent misrepresentation claim, Defendants also "falsely represented to purchasers, consumers, and Window owners that the Windows were warranted against defects in material and workmanship when, in fact, the limited warranty was so limited as to prevent and preclude any warranty protection against the known defect in the Windows." *Id.* ¶ 172. The "when" is when Plaintiffs and the putative Class members and/or their builders and vendors "purchased the Windows and/or structures containing the Windows." *Id.* ¶¶ 35, 37, 176, 190. The "where" is on Defendants' "express warranty and documents available to the public," as well as "their website, brochures and marketing materials." *Id.* ¶¶ 34, 37, 186. And the "how" is by knowingly selling the defective Windows despite knowing of the defects and representing otherwise, which Plaintiffs and the putative Class members were unaware of at the time the Windows were purchased. *Id.* ¶¶ 38-39, 173-179, 184.

10

These allegations are more than sufficient to meet the rigors of Rule 9(b), which is also evident from the authorities Defendants cite.  In *Wigod*, the Seventh Circuit found that the complaint "satisfie[d]" Rule 9(b) when the plaintiff "identifie[d] the knowing misrepresentation as [the defendant's] statement in the [agreement] that it would offer her a permanent modification if she complied with the terms and conditions of the [agreement]" and allege[d] that [Defendant] intended that she would act in reliance on promises it made in the [agreement] and that she reasonably did so to her detriment.  *Wigod*, 673 F.3d at 569; *see Camasta*, 761 F.3d at 737 ("[w]e do not require that Camasta provide the precise date, time, and location that he saw the advertisement or every word that was included on it").  The Complaint's allegations here, as described above, are comparable.

In contrast, the Seventh Circuit rejected the bare-bone allegations in *Camasta* because "something more than [the plaintiff]s assertion that 'merchandise was offered at 'sale prices.'" *Id.* at 737.  And in *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994), the Seventh Circuit noted that, in the context of a Racketeer Influenced and Corrupt Organizations Act claim, it could "see why the district court concluded that, at least with respect to some allegations, [the plaintiff] had not met Rule 9(b)" because the plaintiff "failed to identify with particularity the actors who participated in the various schemes it alleges." *Vicom*, 20 F.3d at 778.  Here, as discussed above, Plaintiffs identify both Defendants as complicit in the fraud.

Defendants also argue that there are no allegations that Defendants had any duty to disclose.  Contrary to Defendants' assertion, the Wisconsin Supreme Court in *Tietsworth v. Harley-Davidson, Inc.*, 2004 WI 32, 270 Wis. 2d 146, 677 N.W.2d 233, 239, did not "decline to extend this duty [to disclose] to sales of consumer goods."  Dkt. No. 11, at 8.  Rather, the court

11

simply stated that "it is an open question whether the duty to disclose recognized in [for non-commercial real estate transactions] extends more broadly to sales of consumers goods"; "[b]ut the parties did not brief it, and therefore [the court does] not decide it." *Tietsworth*, 2004 WI 32, ¶ 15, 270 Wis. 2d at 158, 677 N.W.2d at 239. But after *Tietsworth*, the Wisconsin Supreme Court held "broadly" in *Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, 283 Wis. 2d 555, 699 N.W.2d 205, which Defendants cite, the following:

> [W]e conclude that a party to a business transaction has a duty to disclose a fact where: (1) the fact is material to the transaction; (2) the party with knowledge of that fact knows that the other party is about to enter into the transaction under a mistake as to the fact; (3) the fact is peculiarly and exclusively within the knowledge of one party, and the mistaken party could not reasonably be expected to discover it; and (4) on account of the objective circumstances, the mistaken party would reasonably expect disclosure of the fact.

*Kaloti Enterprises, Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 20, 283 Wis. 2d 555, 573-74, 699 N.W.2d 205, 213. There is "no reason why the same general principles [enunciated in *Kaloti*] would not apply to a consumer transaction." *Schmidt v. Bassett Furniture Indus.*, No. 08-C-1035, 2009 WL 3380354, at *10 n.2 (E.D. Wis. Oct. 20, 2009). Here, the Complaint alleges that: (1) the fact that the Windows were defective is material to Plaintiffs and members of the putative Class (Compl. ¶¶ 4, 27, 187); (2) Defendants knew that Plaintiffs and members of the Class were unaware of the defect (*id.* ¶¶ 182, 185-186, 188); (3) Defendants had exclusive knowledge of the defective nature of the Windows at the time of sale, which Plaintiffs or Class members, in the exercise of reasonable diligence could not have discovered prior to purchase (*id.* ¶ 184); and (4) Defendants would reasonably have been expected to disclose the defect (*id.* ¶

12

182).  Thus, based on the allegations, it is clear that Defendants had a duty to disclose the defect.[3]

Finally, Defendants, who appear to then acknowledge that *Kaloti Enterprises Inc.* imposes a duty to disclose, argue that a duty to disclose is foreclosed because Plaintiffs were not parties to the transaction to purchase the Windows.  Dkt. No. 11, at 9.  But Wisconsin law extends the duty to disclose when "it is foreseeable and intended that a fraudulent misrepresentation will be repeated to third parties and acted upon by them," even if the parties "did not speak directly."  *State v. Timblin*, 2002 WI App 304, ¶ 31, 259 Wis. 2d 299, 314, 657 N.W.2d 89, 97.  Here, it was wholly foreseeable that Defendants' representations and silence regarding the defective nature of the Windows would be repeated to Plaintiffs and Class members.  *See Forst v. SmithKline Beecham Corp.*, 602 F. Supp. 2d 960, 971 (E.D. Wis. 2009) ("[i]t is wholly foreseeable to a drug manufacturer that its prescribing and side effect information will be communicated to and relied upon by patients, even when the drug company only interacts directly with prescribing physicians and not patients").  Thus, Defendants had a duty to disclose regardless if Plaintiffs were direct parties to the transaction.

### C.    The WDTPA Is Sufficiently Pled

Defendants argue that the WDTPA is insufficiently pled because it fails to meet the rigors of Rule 9(b) and is premised on nondisclosures.  Dkt. No. 11, at 9-11.  Both arguments are based on mischaracterizations of the Complaint and should be rejected.

---

[3]Regardless of their duty to disclose, Defendants are still liable to Plaintiffs for their affirmative fraudulent misrepresentations.  *See, e.g.*, *Coltman v. Kase*, 2015 WI App 75, ¶ 18, 870 N.W.2d 248 (Wis.App. Aug. 31, 2015) ("[t]he elements of a fraud claim are: (1) a knowingly false representation of fact; (2) made with intent to defraud and for the purpose of inducing another to act upon it; and (3) justifiable reliance upon the false representation, causing injury or damage").

13

First, as discussed above, *supra* Section B.2, Plaintiffs' fraudulent misrepresentation allegations meet Rule 9(b). In addition, the Complaint repeats those allegations for the WDTPA claim. Compl. ¶¶ 158-169. Second, Defendants' assertion that the WDTPA claim is based on nondisclosures ignores the actual text of the Complaint. The Complaint alleges that: (1) Defendants ***affirmatively*** represented to the public through their express warranty, their website, brochures, and other documents available to the public, that the Windows were free of defects (Compl ¶¶ 34, 37); (2) those representations were "untrue, deceptive or misleading" (*id.* ¶¶ 158-159, 161); and (3) the representations materially induced a pecuniary loss to Plaintiffs and the Class (*id.* ¶¶ 35-36, 166, 168-169). These allegations are sufficient to make out a WDTPA claim. *See Novell v. Migliaccio*, 2008 WI 44, ¶ 49, 309 Wis. 2d 132, 151, 749 N.W.2d 544, 553 ("there are three elements in a § 100.18 cause of action: (1) the defendant made a representation to the public with the intent to induce an obligation, (2) the representation was 'untrue, deceptive or misleading,' and (3) the representation materially induced (caused) a pecuniary loss to the plaintiff").

## D. Defendants' Breach Of Implied Warranty Arguments Should Be Ignored

Defendants argue that the breach of implied warranty claim should be dismissed because the Uniform Commercial Code ("UCC") does not extend implied warranties to real estate transactions (Dkt. No. 11, at 10-14), and that the express warranty disclaims the implied warranty. *Id.*, at 15-16. Both arguments are not justified by the pleadings and are inappropriate for resolution on a motion to dismiss.

14

### 1. The Implied Warranty Claim Is Premised On Contracts Where The Windows Were Purchased As Goods

Under Article 2 of Wisconsin's version of the UCC, a "warranty that the goods shall be merchantable is implied in a contract for their sale." Wis. Stat. § 402.314. As Defendants note, implied warranties only extend to things "which are moveable at the time of identification to the contract for sale." *Id.* § 402.105(c). But Defendants misconstrue the nature of Plaintiffs' implied warranty claim. Rather than claiming that an implied warranty arose out of Plaintiffs' and the Classes' contracts to purchase the houses that contained the defective Windows, Plaintiffs' implied warranty claim is premised on the contracts that retailers, suppliers, and/or contractors entered into with Defendants to purchase the Windows. Compl. ¶¶ 110-111. At the time these retailers, suppliers, and/or contractors purchased the Windows, the Windows were indisputably "moveable goods" because Defendants are only in the business of manufacturing and selling the Windows, not installing them. *Id.* ¶¶ 10, 14-15, 110; *Selzer v. Brunsell Bros.*, 2002 WI App 232, ¶ 16, 257 Wis. 2d 809, 822, 652 N.W.2d 806, 812 ("[b]ecause the sale of the windows is a transaction in goods, it is governed by the Uniform Commercial Code"). Accordingly, Plaintiffs and the Class, as intended third-party beneficiaries, step into the shoes of the retailers, suppliers, and/or contractors from whom they acquired the Windows, and assert implied warranty claims arising from the contracts between those retailers, suppliers, and/or contractors and Defendants. Compl. ¶¶ 112-113.

An intended third-party beneficiary may enforce a contract under Wisconsin law. *See, e.g.*, *Goossen v. Estate of Standaert*, 189 Wis. 2d 237, 249, 525 N.W.2d 314, 319 (Ct. App. 1994) ("a contract cannot be enforced by a person not a party to it," but the "exception to that

rule is a contract specifically made for the benefit of a third party"). Here, Plaintiffs and the

Class were intended third-party beneficiaries because "Defendants entered into [these purchase]

contracts with retailers, Plaintiffs, Class members, Plaintiffs' builders, Class members' builders,

suppliers and/or contracts to sell Windows to be installed at Plaintiffs' and Class members'

properties." Compl. ¶ 125; *see Mercado v. Mitchell*, 83 Wis. 2d 17, 29, 264 N.W.2d 532, 538

(1978) ("[i]t is sufficient if a third party demonstrates that he or she is a member of a class of

intended beneficiaries"). This obviates Defendants' entire argument.[4]

---

[4]As such, Defendants' authorities, most of which do not even pertain to Wisconsin law, are irrelevant because they do not address the intended third-party beneficiary's right to enforce the implied warranty of a contract between the manufacturer and the intermediary. *See Getty v. Rountree*, 2 Pin. 379, 1850 WL 1713, at *4 (Wis. 1850) (stating no implied warranty under Wisconsin common law); *C. Ray Miles Const. Co. v. Weaver*, 296 S.C. 466, 468, 373 S.E.2d 905, 906 (Ct. App. 1988) (finding implied warranty under South Carolina common law); *Burke v. Nationstar Mortgage, LLC*, No. 3:14-CV-837, 2015 WL 4571313, at *7 (E.D. Va. July 28, 2015) (finding no separate breach of implied covenant of good faith claim under Virginia law); *Selzer v. Brunsell Bros.*, 2002 WI App 232, ¶ 18, 257 Wis. 2d 809, 823, 652 N.W.2d 806, 812 (discussing the "future performance" exception to the timeliness of a warranty claim); *Leno v. K & L Homes, Inc.*, 803 N.W.2d 543, 550 (N.D. 2011) (finding no implied warranty in a contract for a house); *Linden v. Cascade Stone Co.*, 2005 WI 113, ¶ 31, 283 Wis. 2d at 626, 699 N.W.2d at 199 ("we have never addressed whether a third-party beneficiary action by a homeowner could lie against a subcontractor, and if so, under what circumstances it would be appropriate," but stating that "a third-party action is not a new theory of recovery"); *Bay Breeze Condo. Ass'n, Inc.*, 2002 WI App 205, ¶ 27, 257 Wis. 2d at 527, 651 N.W.2d at 746 (addressing economic loss doctrine to houses); *Weiss v. MI Home Products, Inc.*, 877 N.E.2d 442, 445-46 (Ill. Ct. App. 2007) (finding that under Illinois law, goods are no longer moveable objects when purchased while attached to real estate); *Keck v. Dryvit Sys., Inc.*, 830 So. 2d 1, 8 (Ala. 2002) (finding same under Alabama law); *Gordon v. Acrocrete, Inc.*, No. CIV.A. 05-0329-WS-M, 2006 WL 1096156, at *5 (S.D. Ala. Apr. 24, 2006) (following *Keck*); *Drieblatt v. Osmose, Inc.*, No. 00-CV-11392-MEL, 2001 WL 197941, at *3 (D. Mass. Feb. 12, 2001) (finding no implied warranty for purchase of realty under Massachusetts law); *In re Anderson Cnty.*, 1976 WL 30581, at *1 (S.C.A.G. Jan. 5, 1976) (South Carolina attorney general's opinion that "that a roof on a building is not a good within the meaning of the UCC"); *Winchester Homes v. Hoover Universal, Inc.*, 30 Va. Cir. 22, at *6 n.3, *7 (1992) (finding under Virginia law that appliances may remain goods under the UCC even after installation into a home, but "mortar, dry-wall and plywood that are transformed into a building" do not); *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 99 (D. Mass. 1998) (finding that the UCC does not apply to real estate contracts

16

## 2. There Is Insufficient Evidence That Defendants Properly Disclaimed The Implied Warranty In The Sales Contract

Next, Defendants assert that, pursuant to Wis. Stat. § 402.316(2), they had properly

disclaimed any implied warranty of merchantability with the "Limits of Liability" language in

their warranty booklet, which they submitted with their Motion. (Dkt. No. 11, at 15-16; Dkt. No.

10, Ex. A.) This argument fails because there is no indication, from the pleadings or otherwise,

that the warranty booklet or the "Limits of Liability" language was a part of the sales contract

between Defendants and Class members or the retailers, suppliers, and/or contractors from whom

Plaintiffs and Class members acquired the Windows.

The Wisconsin Supreme Court has addressed and rejected the same type of argument that

Defendants made:

> One of the purposes for the disclaimer requirement is to protect the buyer from
> unexpected and unbargained language. Sec. 402.316, Stats., official U.C.C.
> Comment. This purpose would be defeated if a manufacturer could disclaim
> implied warranties after the contract for sale has been entered into and at a time
> when the automobile is delivered. Ford attempts to counter this argument by
> saying it is undisputed that the sales contract contained a disclaimer. However, the
> contract is not part of the record and is not referred to elsewhere in the record.
> Therefore it cannot be determined whether the disclaimer in the sales contract
> meets the requirements of sec. 402.316(2). *On the basis of this record we must
> conclude that the only disclaimer was in the warranty booklet. This disclaimer
> was ineffective because it was made subsequent to the sale.*

*Taterka v. Ford Motor Co.*, 86 Wis. 2d 140, 149, 271 N.W.2d 653, 656-57 (1978) (emphasis

added). In other words, if the disclaimer language was not a part of the sales contract between

_____

under Maine law); *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 637 (Md. 1995) (finding
under Maryland law that plywood permanent incorporated into houses prior to house purchase
were not goods); *Platinum Unit-Owners' Ass'n v. Residential Constructors, LLC*, No.
2:14-CV-01076-GMN-GW, 2015 WL 1186530, at *4 (D. Nev. Mar. 16, 2015) (recognizing no
implied warranty for real property transactions under Nevada UCC).

Defendants and the retailers, suppliers, and/or contractors, then the disclaimer would be ineffective even if it was sufficiently "conspicuous" under Wisc. Stat. § 402.316(2). *See Estate of Kriefall v. Sizzler USA Franchise, Inc.*, 2011 WI App 101, ¶ 17, 335 Wis. 2d 151, 175, 801 N.W.2d 781, 792-93 *aff'd*, 2012 WI 70, ¶ 17, 342 Wis. 2d 29, 816 N.W.2d 853 ("Excel put nothing into any of the contracts of sale (other than, as already noted at length, the Continuing Guaranty, which, as we have explained, does not modify the implied warranties recognized by the Uniform Commercial Code) that even purports to disclaim, modify or limit either the implied warranties or the remedies for their breach"); *BCR Trucking, LLC v. Paccar, Inc.*, No. 06-CV-901, 2006 WL 3422681, at *5 (E.D. Wis. Nov. 28, 2006) (("BCR asserts that it was not provided with a copy of the manufacturer warranty until the day after the sale of the truck. If so, under the holding in *Taterka*, the disclaimer of implied warranties in the manufacturer warranty on July 2, 2004, may be invalid").

Thus, the effectiveness of Defendants' disclaimer cannot be resolved at this juncture. *See DMT S.A. v. Enercon Indus. Corp.*, No. 06-C-1191, 2008 WL 1869033, at *6 (E.D. Wis. Apr. 24, 2008) (finding unresolved issues of material fact because "[w]hile there is no dispute that this language satisfies the requirements of § 402.316(2), DMT disputes that the Express Warranty and Terms and Conditions are part of its agreement").[5]

---

[5]Indeed, all of Defendants' authorities were decisions made after the record was fully developed. *See Bushendorf v. Freightliner Corp.*, 13 F.3d 1024, 1025 (7th Cir. 1993) (jury trial); *L.S. Heath & Son, Inc. v. AT & T Info. Sys., Inc.*, 9 F.3d 561, 564 (7th Cir. 1993) (summary judgment); and *Recreatives, Inc. v. Myers*, 67 Wis. 2d 255, 260, 226 N.W.2d 474, 476 (1975) (bench trial).

18

**E.  Plaintiffs Should Be Permitted To Plead Unjust Enrichment In The Alternative**

Defendants argue that the unjust enrichment claim should be dismissed because a contract exists in the form of the express warranty.  (Dkt. No. 11, at 16-17.)  But Rule 8(d)(2) and (3) of the Federal Rules of Civil Procedure "permits a party to plead alternative theories of relief under both legal and equitable grounds, even if the theories are inconsistent."  *Diamond Ctr., Inc. v. Leslie's Jewelry Mfg. Corp.*, 562 F. Supp. 2d 1009, 1017 (W.D. Wis. 2008) (citing *Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2003)); *see* Fed. R. Civ. P. 8(d)(2)-(3) ("[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically," and "[a] party may state as many separate claims or defenses it has, regardless of consistensy").  Despite the express instruction of Rule 8(d)(2) and (3), a few courts have dismissed unjust enrichment claims at the pleadings stage because of allegations of a contract covering the same basis.  *See Martin v. LG Elecs. USA, Inc.*, No. 14-CV-83-JDP, 2015 WL 1486517, at *8 (W.D. Wis. Mar. 31, 2015); *see generally*, *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011) ("[i]n Wisconsin the quasi-contractual theories of quantum meruit and unjust enrichment are legal causes of action grounded in equitable principles and can be invoked only in the absence of an enforceable contract").  Still, Plaintiffs have "done nothing more than plead alternative theories of relief," as is their right under Rule 8(d)(2) and (3).  *Diamond Ctr., Inc.*, 562 F. Supp. 2d at 1017.

More importantly, even though Defendants appear to concede the existence of the express warranty for the purposes of their Motion, Defendants have yet to answer the Complaint. Specifically, Defendants still have the opportunity to challenge and/or limit the enforceability of

19

the express warranty in their answer, which, as under Rule 8(e)(2)-(3), may also be inconsistent and in the alternative of their other defenses. *See* Fed. R. Civ. P. 8(e)(2)-(3); *see, e.g.*, *Citgo Petroleum Corp. v. Ranger Enterprises, Inc.*, 573 F. Supp. 2d 1114, 1123 (W.D. Wis. 2008) (defendant answering with eight affirmative defenses despite admitting existence of contract, including prior material breach of contract, unclean hands, frustration of purpose, impossibility of performance, and accord and satisfaction). Thus, the unjust enrichment claim should not be dismissed at this stage of the litigation, especially as the Court has yet to determine that an enforceable contract exists for the same basis as Plaintiffs' unjust enrichment claim.

## F.    The Declaratory And Injunctive Relief Claim Should Not Be Dismissed

Defendants advance two main arguments for dismissing Plaintiff's declaratory relief claim. (Dkt. No. 11, at 17-20.) Both should be rejected.

### 1.    The Requested Declaratory Relief Is Proper

Defendants' first argument is that the relief requested is "beyond the scope" of the declaratory relief statute because the requested relief includes modifying the express warranty and establishing an inspection program and protocol. But the requested relief is clearly permissible because the Seventh Circuit approved certification of an injunctive class requesting similar declaratory relief in another case involving defective windows. In *Pella Corp. v. Saltzman*, 606 F.3d 391 (7th Cir. 2010), the Seventh Circuit affirmed the certification of a class defined as "all class members who own structures containing Pella ProLine aluminum-clad casement windows manufactured from 1991 to the present, whose windows have not yet manifested the alleged defect or whose windows have some wood rot but have not yet been replaced," for the following requested declaratory relief:

20

If successful, these class members would be entitled to six declarations that together essentially declare that [a] all ProLine windows have a defect which results in premature rotting and this defect requires disclosure; [b] that Pella modified its warranty without notice by creating the enhancement program; [c] that Pella must notify owners of the defect; [d] that the ten-year limitation in the original warranty is removed; [e] that Pella will reassess all prior warranty claims related to wood rot; [f] and that Pella, upon a class member's request, will pay the cost of inspection to determine whether the wood rot is manifest, with any coverage disputes adjudicated by a Special Master. This class adjudication process would be followed by an individual claims process in which class members may file a claim with Pella for service '[i]f and when their windows manifest wood rot due to the alleged defect.' The district court explained that absent class members also may bring individual suits for money damages.

*Pella Corp.*, 606 F.3d at 392 (brackets added).

Likewise here, Plaintiffs request declaratory relief that mirrors the declaratory relief requested in *Pella Corp.* on behalf of "[a]ll persons and entities who are current or former owners of a structure on which Defendants' wood or wood-clad Windows are installed" ("Injunctive Relief Class") (Compl. ¶¶ 68, 210):[6]

Plaintiffs seek a ruling that:

a) the Windows have a defect which results in a premature failure and premature rotting of wood component of the sash. The rotting of the wood component may not be detectable until after the warranty provided by Defendants has expired. The Court finds that this defect is material and requires disclosure for all of these Windows;

b) the Windows have a defect in workmanship and material that allows water to penetrate behind the aluminum clad sash component of the window resulting in premature rotting of the wood component, which rot may progress to adjacent wood components, and that the rotting of the wood component may not be detectable until after the existing warranty provided by Defendants has expired. The Court declares that all persons who own structures containing Windows are to be provided the best practicable notice of the defect, which cost shall be borne by Defendants;

c) certain provisions of Defendants' warranty are void as unconscionable;

d) any limitation on the warranty is removed;

---

[6]Plaintiffs also puts forth an alternative Wisconsin-only injunctive Class. Comp. ¶ 68.

e) the limitation of the warranty to the date of manufacture, rather than the date of installation, is removed;
f) Defendants shall re-audit and reassess all prior warranty claims, including claims previously denied, in whole or in part, where the denial was based on warranty or on other grounds, of claims related to wood rot, and pay the full cost of repairs and damages; and
g) Defendants will establish an inspection program and protocol, under Court supervision, to be communicated to Class members, which will require Defendants to inspect, upon request, a Class member's structure to determine whether wood rot is manifest. Any disputes over coverage shall be adjudicated by a Special Master appointed by the Court and/or agreed to by the parties.

*Id.* ¶ 211. Moreover, the Seventh Circuit's explanation of the nature of the requested declaratory relief fits the language of the declaratory relief statute:

Those who have replaced their windows are properly members of the (b)(3) class because they require the award of damages to make them whole. Those who have not replaced their windows but might in the future because of the purported design flaw are properly members of a (b)(2) class. Such purchasers would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows when they manifest the defect, or final equitable relief.

*Pella Corp.*, 606 F.3d at 395;[7] *see* 28 U.S.C. § 2201 (a court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought").

Meanwhile, none of Defendants' authorities provide any support for their position that the requested declaratory relief is improper. In *Steffel v. Thompson*, 415 U.S. 452 (1974), the Supreme Court held that "federal declaratory relief is not precluded when no state prosecution is pending and a federal plaintiff demonstrates a genuine threat of enforcement of a disputed state criminal statute." *Steffel*, 415 U.S. at 475. And in *Deveraux v. City of Chicago*, 14 F.3d 328 (7th

---

[7]Plaintiffs also propose a "(b)(3) [damages] class" for "current or former owners of a structure in which Defendants' wood or wood-clad Windows are installed and whose Windows have exhibited wood rot. Comp. ¶ 68.

Cir. 1994), the Seventh Circuit held that no declaratory judgment could be granted on an issue that would not "bind the [defendant] or alter the legal relationship of the parties." *Deveraux*, 14 F.3d at 331. Here, in contrast, the requested declaratory relief would bind Defendants to the fact that the Windows suffer an "inherent design flaw," establish that Class members whose injuries have yet to manifest from the defective Windows are covered by Defendants' warranty, and compel Defendants to replace the Windows when the defect does manifest.[8]

### 2. Defendants' "Viability" Argument Is Premature And Unpersuasive

Next, Defendants argue that the injunctive relief that Plaintiffs seek is not viable because it purportedly is not supported by Rule 23(b)(2) of the Federal Rules of Civil Procedure. (Dkt No. 11, at 18-21.) This is essentially a challenge to the certifiability of Plaintiffs' proposed Injunctive Relief Class, and wholly improper at this stage of the litigation. *See, e.g.*, *De Falco v.*

---

[8]As such, Defendants' footnote argument that the declaratory judgment will "resolve issues that will be resolved simply by resolving [*sic*] Davias' substantive claims" should be rejected. (Dkt. No. 11, at 18 n.9.) Unlike *Collegians for a Constructive Tomorrow-Madison v. Regents of Univ. of Wisconsin Sys.*, 820 F. Supp. 2d 932 (W.D. Wis. 2011), there are "ongoing violations" of Plaintiffs' and the Class' contractual rights and "ongoing" statutory and tort injuries from Defendants' continuing policy of refusing to honor the express warranty or otherwise repair the Windows. *Collegians for a Constructive Tomorrow-Madison*, 820 F. Supp. 2d at 952. So a declaratory judgment would remove "a cloud of uncertainty" over the rights of Class members, especially those whose injuries have yet to manifest from the defective Windows. *Id.* And as Plaintiffs' claims are properly alleged and the Court has yet to dismiss any of Plaintiffs' claims, Defendants' insistence that Plaintiffs "would be unable to base their request on any substantive claims that this Court dismisses" is premature, while Defendants' authorities are distinguishable. Dkt. No. 11, at 18 n.9; *see Saltzman v. Pella Corp.*, No. 06 C 4481, 2007 WL 844883, at *6 (N.D. Ill. Mar. 20, 2007) ("I may be quite unlikely to grant the declaratory relief Plaintiffs are requesting. Nevertheless, based on the standards for motions to dismiss under Fed.R.Civ.P. 12(b), it is premature to make that determination here"); *cf. Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 675 (7th Cir. 2009) (requested declaratory relief moot where defendant provided requested relief); *Ferguson-Kubly Indus. Servs., Inc. v. Circle Envtl., Inc.*, 409 F. Supp. 2d 1072, 1082 (E.D. Wis. 2006) (reasoning that court has ability to establish law applicable to parties' agreement through a declaratory judgment).

23

*Vibram USA, Inc.*, No. 12 C 7238, 2013 WL 1122825, at *9 (N.D. Ill. Mar. 18, 2013) ("[w]hile there may indeed be issues with the proposed class, the Court believes it is premature to engage in this analysis at the motion to dismiss stage"); *Boatwright v. Walgreen Co.*, No. 10 C 3902, 2011 WL 843898, at *2 (N.D. Ill. Mar. 4, 2011) ("[a]t this procedural stage, the Court is not equipped with the information needed to conduct the rigorous analysis required to determine whether Rule 23's requirements have been satisfied"). Indeed, both of the authorities that Defendants cite, *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) and *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481 (7th Cir. 2012), were decisions regarding class certification orders.

Regardless, Defendants' position that the requested relief is not "viable" is meritless. As discussed above, the Seventh Circuit approved in *Pella Corp.* declaratory relief very similar to the declaratory relief Plaintiffs request here. *See supra*, at F.1.[9] Further, Defendants' reliance on *Dukes* and *Jamie S.* is misplaced. In *Dukes*, which was an employment discrimination class action, the Supreme Court held that a Rule 23(b)(2) class was improper for a Title VII action because of the "detailed remedial scheme" Title VII applied to determine backpay even after "a plaintiff prevails in showing that an employer has discriminated against him;" Title VII precluded any backpay "if the employer can show that it took an adverse employment action against an employee for any reason other than discrimination." *Dukes*, 131 S. Ct. at 2560-61. Meanwhile, in *Jamie S.*, a civil rights action based on the Individuals with Disabilities Education Act, the Seventh Circuit rejected a Rule 23(b)(2) class where the injunctive relief required "thousands of

_____

[9]Though decided before *Dukes* and *Jamie S.*, *Pella Corp.* remains good law in light of those decisions. *See, e.g.*, *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015) (citing *Pella Corp.*).

24

individual determinations of class membership, liability, and appropriate remedies" and had an "opt-in" process. *Jamie S.*, 668 F.3d at 499. More specifically, class membership was "not adequately defined or nearly ascertainable" because each potential class member required an "inherently particularized inquiry into the circumstances" of his or her case to determine if the class member suffered the mental handicap necessary to qualify for the class and, if so, whether the defendant fulfilled its obligations to each class member to determine the proper relief. *See id.* at 498.

Here, in contrast to *Jamie S.*, the determination of membership in the Injunctive Relief Class in this consumer class action is objective and straightforward - either the person own or owned a structure with the defective Windows or the person did not. *See, e.g.*, *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 660-61 (7th Cir. 2015) (finding class definition ascertainable and definite where "[i]t identifies a particular group of individuals (purchasers of Instaflex) harmed in a particular way (defrauded by labels and marketing materials) during a specific period in particular area"). And the so-called "extensive [remedial] scheme" Plaintiffs request is actually simple and straightforward, and, unlike in *Dukes* and *Jamie S.*, does not require further individualized inquiries as to liability.

Contrary to Defendants' assertion that the requested relief will only "provide potential litigants *notice* that, *if* they want to sue or otherwise seek relief from Defendants, they could do so," the requested declaratory relief will hold Defendants liable to repair any damage arising from the defective Windows to all Injunctive Relief Class members without any need for further litigation. *See* Compl. ¶ 211. In other words, the requested relief is final because Defendants will be held to honor their warranty and repair the defective Windows and any other damages

25

caused by the Windows for all Injunctive Relief Class members (which will require an inspection program and protocol under Court supervision because Defendants have hitherto refused to set one up to properly do so).  *See Pella Corp.*, 606 F.3d at 395 ("purchasers would want declarations that there is an inherent design flaw, that the warranty extends to them and specific performance of the warranty to replace the windows when they manifest the defect, **or final equitable relief**") (emphasis added); *see also Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 379 (7th Cir. 2015) ("[i]t is routine in class actions to have a final phase in which individualized proof must be submitted"); *Johnson v. Meriter Health Servs. Employee Ret. Plan*, 702 F.3d 364, 369 (7th Cir. 2012) ("a declaration is a permissible prelude to a claim for damages, that is, to monetary relief for a concrete harm already suffered").

### G. Plaintiffs Request Leave To Amend If The Court Finds Any Of The Claims Deficient

Leave to amend is liberally granted.  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012). "[W]hile a court may deny a motion for leave to file an amended complaint, such denials are disfavored." *Gevas v. Mitchell*, 492 Fed. Appx. 654 (7th Cir. 2012) (quoting *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010)).  The few exceptions to this general rule of permissiveness, however, are where amendment would be futile or is sought in bad faith.  *Foman*, 371 U.S. at 182; *Gevas*, 492 Fed. Appx. at 659 (citation omitted).  To date, Plaintiffs have not amended their Complaint and no discovery has occurred.  The circumstances here clearly permit amendment. As a result, there is no bad faith, and leave to amend should be liberally granted (and Plaintiffs respectfully request leave to amend) should the Court determine that any of the claims are deficient in any way.

26

IV.     **CONCLUSION**

For the reasons stated above, this Court should deny Defendants' Motion in its entirety

or, in the alternative, permit Plaintiffs to amend the Complaint.

Dated: November 20, 2015                    Respectfully submitted,

                                            s/James C. Shah
                                            James C. Shah (Bar No. 1083846)
                                            **SHEPHERD, FINKELMAN, MILLER**
                                            **  & SHAH, LLP**
                                            735 N. Water Street
                                            Suite 1222
                                            Milwaukee, WI 53202
                                            Phone:  (414) 226-9900
                                            Email:  jshah@sfmslaw.com

                                            **Jonathan Shub**
                                            Kohn Swift & Graf, P.C.
                                            One South Broad Street
                                            Suite 2100
                                            Philadelphia, PA 19107
                                            Phone:  (215) 238-1700
                                            Email:  jshub@kohnswift.com

                                            Daniel K. Bryson
                                            Matthew E. Lee
                                            **WHITFIELD BRYSON & MASON LLP**
                                            900 W. Morgan Street
                                            Raleigh, NC 27609
                                            Phone: (919) 600-5000
                                            Email: dan@wbmllp.com
                                                    matt@wbmllp.com

                                            *Attorneys for Plaintiff and Proposed Class*

27