IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| THOMAS DAVIA and JEANNE DAVIA, on behalf of themselves and all others similarly situated, | Case No. 2:15-cv-01041-LA |
| Plaintiffs, | **REPLY IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS THE COMPLAINT** |
| v. | |
| WINDSOR WINDOW COMPANY d/b/a WINDSOR WINDOWS AND DOORS, And WOODGRAIN MILLWORK, INC., | |
| Defendants. | |

---

## INTRODUCTION

This case is about an alleged breach of express warranty, nothing more. The Davias' response to the motion to dismiss highlights that their claims are premised on two facts: their unpleasant discovery of an alleged window defect and their dissatisfaction with Windsor's express warranty. This is the stuff of an ordinary warranty claim, which must be resolved under warranty law. The law does not permit the expansion of an express warranty when, as here, the plaintiffs allege no more than a defect and the defendants' failure to honor a warranty. Instead, the law, where appropriate, enforces the express warranty as written.

Defendants respectfully ask the Court to dismiss all but the express warranty claim.

## ANALYSIS

**I.  The Davias insufficiently pled damage to "other property" and "other personal property" to avoid dismissal of their tort claims (Counts I, V–VII).**

The Davias do not dispute that the economic loss doctrine bars them from recovering, in tort, for alleged damages to their windows and house. Pl. Memo. at 7–9. They argue only that

1

the Complaint's naked assertion of damage to "personal property" saves the tort claims. *Id.*

But that argument is flawed in two ways. First, even if right (it is not), it would only allow *partial* recovery in tort, recovery in tort for damage to *the personal property*, not for damages to the windows or the house. Indeed, that is how Wisconsin's economic loss doctrine has been construed by the same South Carolina federal court that the Davias urge this Court to follow. *See* Pl. Memo. at 7–8. *See In re MI Windows & Doors, Inc. Prods. Liab. Litig.* (a.k.a. *Meifert*), No. 2:12-CV-01256-DCN, 2012 WL 4846987, at *4–5 (D.S.C. Oct. 11, 2012) (concluding that although plaintiffs adequately pled "other personal property" damage, that meant only that they could recover in tort "for recovery of damage to 'other personal property,'" not for "damage to the finishes, walls, and floors in the home, the replacement cost of the windows, and the diminution in value of the home").[1]

Second, "[a] conclusory assertion of damage to property is not enough." *Martin v. LG Elecs. USA, Inc.*, No. 14-CV-83-JDP, 2015 WL 1486517, at *6 n.4 (W.D. Wis. Mar. 31, 2015). And because the Davias do not plausibly assert that their alleged window defect caused damage to "personal property," the economic loss doctrine entirely bars the tort claims.

"To survive a motion to dismiss, a Complaint must contain sufficient *factual matter*, accepted as true, to state a claim to relief that is *plausible* on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added and quotation omitted). To cross the plausibility line, the Complaint must allege more than "labels and conclusions[,] a formulaic recitation of the elements of a cause of action," and "naked assertions devoid of further factual enhancement."

---

[1] The Davias did not cite that case. But *Meifert* is at the core of what was being relied on by the string of South Carolina federal court decisions (Pl. Memo. at 7–9) that noted, in various ways, "[i]n a similar multidistrict litigation involving windows, this court determined that . . . allegations of damage to 'other personal property,' although 'by no means highly detailed,' properly stated a claim for negligence." *Naparala v. Pella Corp.*, No. 2:14-MN-00001-DCN, 2015 WL 2379492, at *4–5 (D.S.C. May 19, 2015). Also, contrary to the impression that the Davias' may have given, none of their South Carolina cases involved allegations of damage to "other personal property"; in fact, all ***dismissed*** negligence claims under various economic loss doctrines. *See, e.g.*, *id.* (applying Wisconsin's economic loss doctrine).

*Id.* (quotation omitted). That means that "[a] plaintiff may not escape dismissal on a contract claim, for example, by stating that he had a contract with the defendant, gave the defendant consideration, and the defendant breached the contract. What was the contract? The promises made? The consideration? The nature of the breach?" *Bissessur v. Indiana Univ. Bd. of Trustees*, 581 F.3d 599, 603 (7th Cir. 2009). Moreover, particularly relevant for class actions, "[i]f discovery is likely to be more than usually costly, the complaint must include as much factual detail and argument as may be required to show that the plaintiff has a plausible claim." *See Limestone Dev. Corp. v. Vill. of Lemont, Ill.*, 520 F.3d 797, 803–04 (7th Cir. 2008).

It cannot get any more "formulaic" or "naked" than the Davias' bald assertion that unspecified "personal property" has been damaged by leaky windows. There is not a single bit of factual information alleged in the Complaint to flesh out this "other personal property" assertion. Nor is there any plausible factual allegation as to how the window defect that the Davias allege, which permits such gradual water intrusion that the problem is difficult to discover within ten years of installation,[2] caused damage to anything other than the windows and the structural components of the house. Rather, the Davias simply recite a conclusory formula: "The defective Windows allowed water to intrude into the Davias' home, resulting in property damage to their home including . . . damage to other personal property." Compl. ¶ 65. This "conclusory assertion of damage to property is not enough." *See Martin*, 2015 WL 1486517, at *6 n.4. Without more, it cannot defeat Defendants' motion to dismiss, under the economic loss doctrine. The tort claims must be dismissed.

**II.     The Davias insufficiently pled fraud to survive the motion to dismiss their fraud-based tort claims (Counts V and VI) under Fed. R. Civ. P. 9(b).**

"[T]he purpose of [Rule 9(b)'s] particularity requirement is to discourage a 'sue first, ask

---

[2] *See* Compl. ¶¶ 13, 17, 61; McMillen Decl., Ex. A (ten year warranty).

questions later' philosophy." *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013) (quotation omitted). But that is what we have here. The Davias argue that they have stated with particularity the circumstances of Defendants' alleged fraud. Pl. Memo. at 10–11. But if we parse through the smoke of the Complaint, what we find is a far more benign claim: that the Davias claim to be damaged by defective windows that they did not know were defective at the time of purchase.[3] That is an ordinary warranty claim, governed by ordinary warranty law. *See Grams v. Milk Prods., Inc.*, 2005 WI 112, ¶ 15, 283 Wis. 2d 511, 520–21, 699 N.W.2d 167, 171 ("Wisconsin has recognized the superior ability of contract law . . . to deal with . . . a product [that] proves to be defective.") (quotation omitted).

The Davias have tried to dress this ordinary warranty claim in the more scandalous clothing of fraud. But this emperor has no such clothes. The Fourth and Eighth Circuits have previously been faced with ordinary warranty claims clothed in the language of fraud, and they have looked past the disguise. *Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (rejecting appellants' argument that they had adequately stated a statutory fraud claim by stating that a building product manufacturer "fail[ed] to give adequate warnings and notices about the allegedly defective quality of the Trim-board"; "The . . . allegation simply re-couches Appellants' breach of warranty claim."); *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 877 (8th Cir. 2000) (rejecting Marvin's argument that manufacturer engaged in fraud, explaining that Marvin made only "ordinary warranty claims"; "The substance of [the] ordinary warranty claims is that [the manufacturer] warranted that [the product] would adequately prevent wood rot, but the product failed.").

---

[3] Contrast this to the *Pella* case, on which the Davias rely so heavily. Pl. Memo. at 20–21. There, the plaintiffs' fraud allegations pointed to a cover up, alleging that the window manufacturer retroactively modified the governing warranty "without notice" to the consumers after consumer complaints. *Pella Corp. v. Saltzman*, 606 F.3d 391, 392 (7th Cir. 2010). Here, we have nothing of the sort. We have simply an ordinary warranty claim, dressed in the conclusory language of fraud.

4

Relatedly, the South Carolina federal court has dismissed a statutory fraud claim against a window manufacturer, rejecting the following as inadequate pleadings:

> "that the Windows had characteristics, uses, and benefits that they did not have, specifically, that the Windows were dependable, high quality products, free of defects," and that "MIWD "intentionally concealed from Plaintiff and the Class that its Windows were defective." Compl. ¶¶ 29.b., 29.g. These allegations do not identify the time or place of any misrepresentations on which plaintiff relied, and do not identify the speaker who made these representations.

*In re MI Windows & Doors, Inc. Prods. Liab. Litig.*, No. 2:12-CV-02269-DCN, 2012 WL 5182416, at *2 (D.S.C. Oct. 18, 2012). Analyzing the Complaint under the who, what, where, when, and how requirements of Rule 9(b) demonstrates why this must be so. The Davias have not and cannot make out a fraud claim because all they really claim is that the windows were defective and they were not told and did not know of the defect.

The "who": The Davias argue that they adequately alleged the "who" by identifying "Defendants." Pl. Memo. at 10. They are mistaken. The Davias sued two defendants: Woodgrain and Windsor. At no time did they distinguish between them as to what their particular role in the fraud was. Rather, in their Complaint, they simply lump both defendants together as "Defendants." But Rule 9(b) requires more. It "is not satisfied where the complaint vaguely attributes the alleged fraudulent statements to 'defendants.'" *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 730 (7th Cir. 1998), *holding modified on other grounds by Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000); *see Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) ("[I]n a case involving multiple defendants, . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud"; Rule 9(b) not satisfied when "the complaint lumped all the defendants together and did not specify who was involved in what activity.") (quotations omitted); *see also United States v. Sanford-Brown, Ltd.*, 788 F.3d 696, 706 (7th Cir. 2015) (Rule 9(b) not satisfied

5

when plaintiff never distinguished between defendants).

The "what" and the "where": The Davias argue that the fraudulent misrepresentations were statements by Defendants in unidentified materials that include marketing materials, brochures, web sites, and warranties that the windows "will be free from defective materials and workmanship" and "are suitable and free from defects." Pl. Memo. at 10; *see* Compl. ¶ 133.

But these statements are not the what and where of a viable fraud claim. The Davias provide no notice as to where the information was communicated, but rather just a laundry list of publications that just about every business has: websites (Woodgrain's? Windsor's?), brochures, and marketing materials. The allegations do not advise when these publications were prepared and do not identify whether the windows the Davias purchased or some other windows are discussed in these publications.[4] Worse, the Davias do not even allege what the "Defendants'" materials *actually said*. Rather they allege that the unspecified documents "expressly or impliedly" indicated that "the Windows are suitable and free from defects." Compl. ¶ 37. If the Davias were truly defrauded, this is information that would be readily known to them.

Moreover, it appears that what the Davias are really describing are (portions of) warranty representations found in Windsor's express warranty. Ex. A.[5] These warranty statements are fatal to a fraud claim, because they are not representations of no defect, "but an acknowledgment that there might be" defects, and a promise to remedy them under the warranty:

> Plaintiff maintains that the written warranty was a representation that the camcorder was free of defects. Quite the contrary, a written warranty of the type included with the camcorder is an express acknowledgment that the product may be defective and a promise by defendant to remedy such a defect in the manner

---

[4] The Complaint broadly defines "Windows" as "wood and wood clad windows" designed, manufactured, and sold by Defendants. This describes a number of Windsor products, and the Davias' windows are from only one such product line: the Pinnacle line of aluminum clad windows. Compl. ¶ 58.

[5] "Windsor . . . warrants that all Pinnacle windows . . . will be free from defects in materials and workmanship which significantly impair their operation and proper usage, subject to conditions and limitations within. . . ."

6

and within the time period prescribed. Defendant's express promise to remedy defects in a product is not a representation that there are none, but an acknowledgment that there might be.

*Ball v. Sony Elecs. Inc.*, No. 05-C-307-S, 2005 WL 2406145, at *3 (W.D. Wis. Sept. 28, 2005).

The Davias also seem to argue that the "what" is the failure of Defendants to disclose that the windows were defective, under *Kaloti*. Pl. Memo. at 10. But they misread *Kaloti*. "The usual rule is that there is no duty to disclose in an arm's-length transaction." *Kaloti Enters., Inc. v. Kellogg Sales Co.*, 2005 WI 111, ¶ 15, 283 Wis. 2d 555, 571, 699 N.W.2d 205, 212. The Davias misplace their reliance on a portion of *Kaloti* that explains when "'*a party* to a business transaction has a duty to disclose'" to "'*the other party*.'" Pl. Memo. at 12 (emphasis added). But that portion, by its terms, applies only to *parties* to a common transaction. The Davias and Defendants were never such parties. Def. MTD MOL at 8–9. They never met and never had a business relationship. Rather, Windsor sold windows to a distributor, which sold windows to a home builder, which installed windows in a home the Davias purchased.

In an attempt to get around that problem, the Davias cite a criminal case, *Timblin*. Pl. Memo. at 13. Nothing in *Timblin* provides any basis to impose a *duty to disclose* on an upstream manufacturer, or anyone else. Rather, it simply makes the common sense observation that an *affirmative* misrepresentation may be actionable in fraud, even if made indirectly. *State v. Timblin*, 2002 WI App 304, ¶ 31, 259 Wis. 2d 299, 314, 657 N.W.2d 89, 97. Neither *Timblin*, nor any court revealed by Defendants' research, has ever extended that common sense observation to make the more dramatic conclusion that persons who never even engaged in a transaction with one another could owe duties of disclosure.[6]

---

[6] Moreover, there was nothing to disclose. The Davias allege that Defendants knew of "the defect," due to "claims and complaints from customers throughout the country." Compl. ¶ 67. But the Davias appear to simply be referring to other lawsuits being orchestrated by the same attorneys who represent the Davias. A complaint is just that, a complaint, not evidence of a defect. Upon investigation, complaints often turn out to be unfounded.

The Davias compare their allegations to those in *Wigod*. Pl. Memo. at 11. *Wigod*, however, well illustrates one of the fatal deficiencies in the Davias' complaint. There, a misrepresentation was alleged to be in a written loan-related agreement, in which a bank allegedly misrepresented to a borrower that "it would offer her a permanent modification if [the borrower] complied with the terms and conditions of the agreement." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 557, 559 (7th Cir. 2012). In contrast, the Davias have not alleged any actual statement made—as opposed to implied—by any of Defendants' alleged marketing materials, nor have they pointed out a specific document in which such a statement was made.

The "when": The Davias do not identify in the Complaint when they saw any of the materials that they claim contained false or misleading representations or omissions. That does not satisfy Rule 9(b). *See, e.g.*, *Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 949 (7th Cir. 2013) ("The 'when' is no clearer. . . . [A]ppellant failed 'to specify times and dates any more clearly than 'from July 2007 through the January 28, 2008 closing on the Second Loan' or 'prior to closing the Second Loan and/or at or around the time of closing the Second Loan' or '[f]rom August 2007 through December 2007.'"); *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 794 (7th Cir. 2004) (Rule 9(b) required "identif[ication of] specific dates on which these misrepresentations were made" to Plaintiffs); *Bourbonnais v. Tesch*, No. 14-C-966, 2015 WL 778627, at *4 (E.D. Wis. Feb. 24, 2015) ("Also missing are any allegations as to when the false representations or omissions were made.").

The Davias ask the Court to relax the "when" requirement, as the Seventh Circuit once did, when it did not require "the precise date . . . [of an] advertisement." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). Pl. Memo. at 11. But that is not the court's practice, and they provide no reason to deviate from the practice. *See Midwest Grinding Co. v.*

*Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) (rejecting argument that, "in cases involving a lengthy period of fraud, the exact date and time of each fraudulent act need not be specifically alleged"); *see also Beyrer*, 722 F.3d at 949; *Dubicz*, 377 F.3d at 794.

<u>The "how"</u>: The Davias argue the "how" is Defendants "knowingly selling the defective Windows despite knowing of the defects and representing otherwise." Pl. Memo. at 10. Even if the windows were defective (they were not), this alleged "how" is insufficient, for two reasons. First, the express warranty was not a representation that there were no defects, "but an acknowledgment that there might be." *Ball*, 2005 WL 2406145, at *3. Second, the alleged conduct (Defendants' silence) could only be the "how" of fraud if Defendants had a duty to disclose what they "[knew] of the defects." *See* Pl. Memo. at 10. Defendants had no such duty.

In short, the Davias have not satisfied Rule 9(b). They have alleged a warranty claim, not fraud. And they cannot, without more, drag two defendants through the mud of a fraud-based class action. *Cf. Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557–58 (2007) (requiring adequate pleading, "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value") (quotations omitted). The fraud-based tort claims must be dismissed.

### III. The Davias insufficiently pled their WDTPA claim (Count IV) and impermissibly based it on alleged nondisclosures.

The Davias, by omission, concede that their WDTPA claim is subject to Rule 9(b) and—to the extent based on nondisclosures—must be dismissed. Pl. Memo. at 14–15.

Instead of contesting those points, the Davias ask the Court to look to what they claim are affirmative representations alleged in the Complaint that "the Windows were free of defects." Pl. Memo. at 14. But, for the same reasons outlined above, Rule 9(b) requires dismissing this claim.

### IV. The Davias' implied warranty claim (Count II) must be dismissed.

### A. The UCC does not apply because the transaction through which the Davias received the windows was a transaction in real estate, not goods.

The Davias generally do not dispute Defendants' UCC argument. They do not disagree that Article 2 of the UCC governs transactions in goods, not real estate; that the windows were goods before they were installed in Davias' house, but ceased to be goods after installation; that the Davias never bought a window, but rather bought a house in which windows were installed; that any transaction that conveyed the windows before installation was a transaction in goods, to which the UCC applied; and that the transaction that conveyed the house after installation was a transaction in real estate, to which the UCC did not apply.

Rather, the Davias raise a third-party-beneficiary theory, in an attempt to bootstrap their implied warranty claim onto transactions to which they were not parties. To do so, they allude to contracts entered into between one or more Defendants, retailers, suppliers, and/or contractors, which were entered before the windows were installed into the Davias' house. Pl. Memo. at 16. They argue that they became beneficiaries of those contracts by "acquir[ing] the Windows," because the windows were previously bought by persons who intended for the windows to be installed in the Davias' house. Pl. Memo. at 15–16.

This argument is without merit, for two reasons. First, the Davias have not alleged a plausible third-party-beneficiary theory, as they provide no indication either that they were identified in the pre-installation contracts or that those contracts identified a class of persons of which the Davias are a part.

"The general rule on third-party beneficiaries in Wisconsin is that one claiming such status must show that the contract was entered into by the parties directly and primarily for his benefit. The benefit must be more than merely incidental to the agreement." *Mercado v. Mitchell*, 83 Wis. 2d 17, 28–29, 264 N.W.2d 532, 538 (1978). "It is sufficient if a third party

demonstrates that he or she is a member of a class of intended beneficiaries." *Id.* But, to do so, the contract of which the purported beneficiary claims to be a beneficiary must, at least, "specif[y] or identif[y] a group or class to whom the party must belong." *Pappas v. Jack O. A. Nelsen Agency, Inc.*, 81 Wis. 2d 363, 372, 260 N.W.2d 721, 725-26 (1978). Whether it does so depends on its language. *See Schilling by Foy v. Employers Mut. Cas. Co.*, 212 Wis. 2d 878, 887, 569 N.W.2d 776, 780 (Ct. App. 1997) ("*The contract* must indicate that the third party either was specifically intended by the contracting parties to benefit from the contract, or is a member of a class the contracting parties intended to benefit.") (emphasis added).

Nowhere in the Davias' Complaint, nor in their response to the motion to dismiss, do they allege that the pre-installation contracts mentioned them or carved out a class of persons in which they might be included. Rather, grasping at straws, they rely on a paragraph in their Complaint that alleges simply that "Defendants entered into contracts with retailers, Plaintiffs, Class members, Plaintiffs' builders, Class members' builders, suppliers and/or contractors to sell Windows to be installed at Plaintiffs' and Class members' properties." Compl. ¶ 127, quoted in Pl. Memo. at 16. Fatally absent is any allegation that the pre-installation contracts identified the Davias or a class of intended beneficiaries.

Second, the event that the Davias allege triggered their third-party-beneficiary status was when they "acquired the Windows." Pl. Memo. at 15. At that time, the windows were part of real estate, and the transaction by which the Davias acquired them was a real estate transaction. Moreover, the express warranty itself indicates that it was based on the assumption that the warranty holder would be a homebuyer, not a window buyer. *See, e.g.*, Ex. A ("Replacement parts will be shipped to the closest Windsor distributor at Windsor's expense, or at the option to ship directly to the homeowner at the homeowner's expense."; "This warranty is transferable to

11

subsequent structure owners . . . ."). This demonstrates that it was always contemplated that the Davias would acquire the home in which the windows were installed. It was not contemplated that the Davias would acquire the windows while they were still goods under the UCC.

Therefore, even if the Davias were third party beneficiaries of the pre-installation contracts (which they have not adequately alleged), the UCC would not govern.

### B. Even if the UCC applied, the express warranty disclaimer effectively disclaimed all implied warranties.

The Davias have, by omission, conceded that the disclaimer in the express warranty is sufficiently conspicuous to disclaim the implied warranty. But, they argue that, even if disclaimer is conspicuous, it is "ineffective" because "there is no indication, from the pleadings or otherwise, that the warranty booklet or the 'Limits of Liability' language was a part of the sales contract between Defendants and Class members or the retailers, suppliers, and/or contractors from whom Plaintiffs and Class members acquired the Windows." Pl. Memo. at 17.

This kind of gamesmanship is not allowed by courts. Indeed, Judge Stadtmueller rejected a similar attempt at gamesmanship just under four years ago, reasoning that "Midwest's only real argument in opposition is that the contract attached by PTG to its motion to dismiss *might* not be the contract at issue in this case" and that "it offer[ed] no competing declarations or affidavits to place the authenticity in serious dispute." *Midwest Precision Mfg., Inc. v. PTG Heavy Indus. Ltd.*, No. 11-CV-570-JPS, 2012 WL 113805, at *3 (E.D. Wis. Jan. 13, 2012).[7]

---

[7] *See also, e.g.*, *I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 762 (2d Cir. 1991) ("We therefore decline to close our eyes to the contents of the prospectus and to create a rule permitting a plaintiff to evade a properly argued motion to dismiss simply because plaintiff has chosen not to attach the prospectus to the complaint or to incorporate it by reference."); *Brogren v. Pohlad*, 933 F. Supp. 793, 798 (D. Minn. 1995); *Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1397–98 (E.D. Cal. 1994) ("Plaintiff does not challenge the authenticity of the exemplars submitted by each defendant, and the exemplars indeed contain the language specifically attacked by plaintiff in the complaint. . . . [H]e has provided no competing examples in which the context of the alleged misrepresentations is different from the exemplars. His hope that discovery will somehow turn up favorable examples is not sufficient to deprive defendants of their opportunity to avoid the burdens of discovery through a motion to dismiss.").

Courts may and do rely on warranties attached to motions to dismiss when the warranty is referred to in and is central to the Complaint. *See, e.g.*, *Ball*, 2005 WL 2406145, at *1. The Davias' express warranty is paraphrased at length in the Complaint (*e.g.* Compl. ¶ 40) and is the basis for their express warranty claim (Count III). Defendants have simply provided the warranty on which the Davias rely, and that warranty bars the implied warranty claim.

In support of their position, the Davias misplace reliance on *Taterka*, in which the Wisconsin Supreme Court concluded (in a summary judgment appeal) that it did not have sufficient information to rule on a "contract [that] is not part of the record and is not referred to elsewhere in the record" because, among other reasons, it could not determine whether the warranty was part of the original sale. *Taterka v. Ford Motor Co.*, 86 Wis. 2d 140, 149, 271 N.W.2d 653, 656–57 (1978). In contrast, as set forth above, the express warranty is properly part of the record on this motion. And taking the Davias' allegations in their Complaint as true, as must, the express warranty applies to the windows. Compl. ¶¶ 28–29, 24, 40(d), (p).

The express warranty clearly and conspicuously disclaims implied warranties, and the Davias' claim based on an implied warranty must accordingly be dismissed.

V. **The Davias failed to state a claim for unjust enrichment (Count VIII) because they concede that an express warranty exists.**

Under Wisconsin law, unjust enrichment "can be invoked only in the absence of an enforceable contract." *Carroll v. Stryker Corp.*, 658 F.3d 675, 682 (7th Cir. 2011). An express warranty is a contract that bars unjust enrichment claims. *Martin v*, 2015 WL 1486517, at *7–8.

The Davias allege—and Defendants agree—that an express warranty exists. Nonetheless, the Davias argue that Fed. R. Civ. P. 8(d)(2)–(3) permits them to plead their unjust enrichment claim in the alternative. Pl. Memo. at 19. This argument that was rejected in *Martin*:

> Martin's allegations of fact do not fit his alternative theory of equitable relief. He concedes that he has a warranty. Dkt. 1, ¶ 37. A warranty is an express contract.

13

Therefore, his unjust enrichment claim will be dismissed.

2015 WL 1486517, *8. Likewise, the Davias' unjust enrichment claim must be dismissed.

In a final attempt to rescue this claim, the Davias argue that dismissal would be premature because "the Court has yet to determine that an enforceable contract exists for the same basis as Plaintiffs' unjust enrichment claim." Pl. Memo. at 20. But, again, the *Martin* court has (rightly) rejected such an argument. There, Martin argued that his unjust enrichment claim could prevail because "his contract with defendants [was] not relevant to the subject matter of his complaint." *Martin*, 2015 WL 1486517, at *7. But the existence of the warranty barred the claim because "Martin's complaint recognizes that the warranty covers precisely the basis for his claim: the BD player's ultimate functionality." *Id.* Likewise, the Davias' Complaint recognizes that the warranty covers precisely the basis for their claim: the windows' ultimate functionality. *E.g., compare* Compl. ¶ 21 (basing breach-of-express-warranty claim on windows not functioning properly), *with* ¶ 205 (basing unjust enrichment claim on same basis).

The unjust enrichment claim must be dismissed.

## VI. The Davias' declaratory/ injunctive relief claim (Count IX) must be dismissed.

Defendants argue that the injunctive relief that the Davias request is beyond the scope of the declaratory relief statute, 28 U.S.C. § 2201(a). Def. MOL at 17. The Davias argue that *Pella Corp v. Saltzman* is contrary authority. Pl. Memo. at 20. They are mistaken. Nowhere in *Pella* did the Seventh Circuit even mention declaratory relief under 28 U.S.C. § 2201. Rather, the court was addressing "proposed declarations considered by the district court as *injunctive relief*" under Fed. R. Civ. P. 23(b)(2). *Pella Corp. v. Saltzman*, 606 F.3d 391, 392, 395 (7th Cir. 2010) (emphasis added). This distinction matters. In Count IX, which the Davias titled "**DECLARATORY RELIEF 28 U.S.C. § 2201**," they appear to base their count on 28 U.S.C. § 2201 and Fed. R. Civ. P. 23(b)(2). As Defendants argued in their initial memorandum of law,

14

and as the Davias have not disputed, 28 U.S.C. § 2201 provides no basis for this Count. For that reason, at least as to 28 U.S.C. § 2201, this Count must be dismissed.

As to Rule 23(b)(2), Defendants addressed it because the Davias appeared to base Count IX on it. *See* Compl. ¶ 210. Davias have now indicated that they cited that rule only due to its relevance to class certification. Pl. Memo. at 23. In that light, Defendants agree that whether this rule applies would be best addressed later, if this case reaches the class certification stage.[8]

## VII. The Court should defer deciding whether to grant the Davias leave to amend the Complaint until it identifies what amendments they propose.

As a back-up plan, the Davias ask this Court for what would effectively be a blank check to amend, if the Court decides that dismissal of any claims is appropriate. Pl. Memo. at 26. Defendants oppose this request for a blank check. *See, e.g.*, *Ivanov v. Nyhus*, No. 14-CV-382-JDP, 2014 WL 5307936, at *4 (W.D. Wis. Oct. 16, 2014) ("Rule 15 is not a blank check in this court. Now that we are past the date to amend pleadings without leave of court, amendments to the pleadings will require some explanation.").

Only with a draft of the proposed amended pleading can the parties and the Court consider whether the amendment would be futile. But, if the Court grants Defendants' motion to dismiss the non-express-warranty claims, Defendants would of course agree to meet and confer with the Davias to consider a proposed amendment to the Davias' Complaint.

## CONCLUSION

Defendants respectfully ask this Court to grant their partial motion to dismiss, leaving the only claim that this case really is about: the express-warranty claim.

---

[8] But, even then, the Davias' argument would lack merit, and their reliance on *Pella* would be misplaced. If, as Defendants expect, this Court grants their motion to dismiss, only the express warranty claim will remain. This is critical because damages only, not injunctive relief, are appropriate for breach-of-warranty claims. In contrast, *Pella* involved no express warranty claim. *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 474, 483 (N.D. Ill. 2009), *aff'd,* 606 F.3d 391 (7th Cir. 2010). For this, and other reasons, *Pella* does not support Rule 23(b)(2) certification.

15

Dated this 4TH day of December, 2015.

                    **MICHAEL BEST & FRIEDRICH LLP**

By: *s/Joseph L. Olson*
    Paul E. Benson, SBN 1001457
    Joseph L. Olson, SBN 1046162
    100 East Wisconsin Avenue, Suite 3300
    Milwaukee, WI 53202-4108
    P: 414.271.6560
    F: 414.277.0656
    pebenson@michaelbest.com
    jlolson@michaelbest.com

ARTHUR, CHAPMAN, KETTERING,
SMETAK & PIKALA, P.A.
Michael P. North (MN #230716)
Sarah E. Bushnell (MN #326859)
500 Young Quinlan Building
81 South Ninth Street
Minneapolis, MN 55402-3214
P: (612) 339-3500
F: (612) 339-7655
mpnorth@ArthurChapman.com
sebushnell@ArthurChapman.com
(Admissions to be Sought)

*Attorneys for Defendants*
*Windsor Window Company d/b/a Windsor Windows and Doors, and Woodgrain Millwork, Inc.*

209265-0001\18231187.1